LATHAM & WATKINS LLP
Serrin Turner (*pro hac vice*)
*serrin.turner@lw.com*
Nicolas Luongo (*pro hac vice* pending)
*nicolas.luongo@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Brad Baglien (*pro hac vice*)
*brad.baglien@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

In re Meta Android Privacy Litigation.

This Document Relates To:
All Actions

Case No. 3:25-cv-04674-RFL

**DEFENDANT META PLATFORMS, INC.'S REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**

Hearing: March 24, 2026
Time: 10:00 a.m.
Location: Courtroom 15—18th Floor
Judge: Hon. Rita F. Lin

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 24, 2026 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, Courtroom 15, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Meta Platforms, Inc., through its undersigned counsel, will, and hereby does, respectfully request that in connection with its Motion to Dismiss the Complaint, the Court consider the documents attached as Exhibits A through H to the accompanying Declaration of Serrin Turner in Support of Meta's Motion to Dismiss the Complaint, filed concurrently herewith. The documents are properly considered by the Court on Meta's motion because they are subject to judicial notice under Federal Rule of Evidence 201 and/or incorporated by reference into the Complaint.

Dated: January 30, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By */s/ Serrin Turner*

Serrin Turner (*pro hac vice*)
*serrin.turner@lw.com*
Nicolas Luongo (*pro hac vice* pending)
*nicolas.luongo@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Brad Baglien (*pro hac vice*)
*brad.baglien@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**MEMORANDUM OF POINTS & AUTHORITIES**

Defendant Meta Platforms, Inc. ("Meta") respectfully requests that the Court consider certain documents submitted with Meta's Motion to Dismiss, attached to the concurrently filed Declaration of Serrin Turner ("Turner Declaration"). The documents include: (1) Meta's Privacy Policy and Cookies Policy; (2) two webpages cross-referenced in the Privacy Policy; and (3) a Meta Business Center Help Page cited in the Complaint. These documents are properly considered because they are incorporated by reference into the Complaint and/or subject to judicial notice under Federal Rule of Evidence 201.

## I. LEGAL STANDARD

In deciding a motion to dismiss, a court may consider "materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

The doctrine of incorporation by reference "treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). A document is incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja*, 899 F.3d at 1002 (citation omitted). In these circumstances, the Court may consider the contents of the document and, unlike with judicial notice, "may assume that its contents are true for purposes of a motion to dismiss." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citation omitted). Accordingly, a court "need not credit as true allegations in the complaint that are contradicted by" incorporated documents. *Coyoy v. City of Eloy*, 859 F. App'x 96 (9th Cir. 2021); *see also In re Finjan Holdings, Inc. Secs. Litig.*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023) ("When a general conclusion in a complaint contradicts specific facts retold in a document . . . incorporated by reference in the complaint . . . those specific facts are controlling."). The purpose of the doctrine is to "prevent[] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002. The doctrine "applies with equal force to internet pages as it does to printed material." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Additionally, courts may take judicial notice of matters that are "not subject to reasonable dispute" because they are either (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). While judicial notice does not permit a court to assume the contents of a document are true, it does allow a court to consider the contents of a document "for purposes of determining what information was available to the public" at the time of the events in question. *Woodall v. Walt Disney Co.*, 2024 WL 5337348, at *4 (C.D. Cal. Nov. 1, 2024); *see also, e.g.*, *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 189 (N.D. Cal. 2019) ("[W]hen a court takes judicial notice, it is not noticing the truth of the statements contained in an exhibit. Rather, the Court takes judicial notice that an exhibit was in the public realm.") (citation modified).

## II. ARGUMENT[1]

### A. The Proffered Exhibits Are Incorporated By Reference Into The Complaint

The exhibits at issue consist of:

1) Meta's Privacy Policy[2] and Cookies Policy—specifically, the versions of the policies in effect from September 2024 to the present, encompassing the time period when the challenged conduct allegedly took place (Exhibits A-E);
2) Two Meta webpages cross-referenced in the Meta Privacy Policy: (a) a Meta Help Center page titled "Connecting Activity off Meta technologies to Facebook accounts" (Exhibit F), and (b) a user interface titled "Your activity off Meta technologies" (Exhibit G), both of which concern how off-Meta activity can be connected to or disconnected from Meta accounts; and
3) A webpage on Meta's Business Help Center, titled "About event match quality" (Exhibit H) which is cited in the Complaint and discusses types of identifiers that website operators can transmit to Meta as part of Pixel data.

---

[1] Cites to the Complaint are designated with paragraph marks.

[2] Where the Privacy Policy is cited in the Motion to Dismiss, we cite to Exhibit A, the version of the policy effective on June 26, 2024, which was operative at the start of the time period when the challenged conduct allegedly took place.

As discussed below, all of these documents are incorporated by reference into the Complaint.

**1. Meta's Privacy Policy and Cookie Policy**

Meta's Privacy Policy and Cookies Policy are incorporated by reference into the Complaint, first, because the Complaint extensively refers to these policies. Plaintiffs expressly cite to and quote from Meta's Privacy Policy and Cookies Policy throughout the complaint, including in key passages concerning what Meta discloses about the data it collects from third-party websites and how it uses it. *See, e.g.*, ¶¶ 42, 189 & nn. 36, 37, 69 (citing Meta's Privacy Policy); *id*. at nn. 18, 19, 20, 22, 25, 27 (citing Meta's Cookies Policy). This alone renders the documents incorporated by reference. *See, e.g.*, *Edwards v. MUBI, Inc*., 773 F. Supp. 3d 868, 880 n.8 (N.D. Cal. 2025) (deeming privacy policy incorporated by reference given that it was "discussed in detail" in the plaintiffs' complaint); *Washington v. Flixbus, Inc*., 2025 WL 1592961, at *3 (S.D. Cal. June 5, 2025) (deeming privacy policy incorporated by reference "as the complaint refers extensively" to it); *In re Sequoia Benefits & Ins. Data Breach Litig.*, 2024 WL 1091195, at *3 n.1 (N.D. Cal. Feb. 22, 2024) (Lin, J.) (finding a notice letter incorporated by reference where "the complaint refers extensively" to it).

Second, these documents also are incorporated by reference because they "form[] the basis" of Plaintiffs' claims. *Khoja*, 899 F.3d at 1002 (internal quotation marks omitted). Plaintiffs' claims depend on their alleged lack of consent to Meta's matching of their browsing activity on Android devices to their Facebook or Instagram accounts, which they claim was done "without users' knowledge or consent," ¶ 5, because allegedly "Meta did not disclose the misconduct." ¶ 71. As the Ninth Circuit has explained, where a plaintiff's claims are "dependent upon the extent and sufficiency of [the defendant's] disclosures," the "disclosures form the basis of the claims themselves" and a court may deem those disclosures incorporated by reference. *Gershfeld v. TeamViewer US, Inc.*, 2023 WL 334015, at *1 (9th Cir. Jan. 20, 2023); *see also Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 941 n.2 (N.D. Cal. 2024) (Lin, J.) (finding that defendant's terms of use and privacy policy were incorporated by reference "because Plaintiff's complaint makes allegations regarding [their] existence and content"). That is the case here, because

Plaintiffs cannot adequately allege lack of consent or a reasonable expectation of privacy if Meta's policies disclose the data collection they challenge. *See, e.g.*, *Silver v. Stripe Inc.*, 2021 WL 3191752, at *2-4 (N.D. Cal. July 28, 2021); *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024). Plaintiffs' claims thus "necessarily depend[] on the application of [Meta's] policies—which relate directly to the issue of consent." *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136-37 (N.D. Cal. 2015).

### 2. Webpages Cross-Referenced in Privacy Policy

For similar reasons, webpages cross-referenced in Meta's Privacy Policy—including the Meta Help Center page (Ex. F) and user control interface (Ex. G) attached to the Turner Declaration—are incorporated by reference. First, both documents are incorporated by reference into the Privacy Policy which, as explained above, is in turn incorporated by reference into the Complaint. Specifically, both webpages are cross-referenced in the section of the Privacy Policy titled "Information from partners, vendors and other third parties," which Plaintiffs quote from in the Complaint. *See* ¶ 42.

- **Help Center page**: This section refers to the Help Center page attached to the Turner Declaration (Ex. F), which is titled "Connecting Activity off Meta technologies to Facebook accounts," after disclosing that Meta matches activities shared by third-party partners to users' Meta accounts. It states, "Learn more about how we connect information from partners to your account," with the underlined text linking to the Help Center page. Ex. F; Turner Decl. ¶ 7.
- **User interface:** The same section of the Privacy Policy refers to the user interface attached to the Turner Declaration (Ex. G), which contains controls for managing information Meta receives from third-party partners, in a subsection labeled "Take control." A button appears under that label stating "Your activity off Meta technologies." Clicking on that button brings up the user interface[3], which provides users with options to "Disconnect specific activity," "Clear previous activity," and

[3] If the user is not logged in, clicking on the button brings up a login prompt, after which the user interface in question appears. Turner Decl. ¶ 8 n.2.

"Manage future activity." Turner Decl. ¶ 8. Clicking on the "Manage future activity" option allows users to "Disconnect future activity," which will "disconnect information that businesses and organizations send us about your interactions with them," and also "clear your previous activity." *Id.*; Ex. G at 1-2.[4]

A document "need not recite that it 'incorporates' another document" for that document to be incorporated, "so long as it 'guide[s]' the reader to the incorporated document." *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997) (citation omitted); *see also Brown v. Google LLC*, 2021 WL 6064009, at *10 (N.D. Cal. Dec. 22, 2021) ("California law is clear that [a] contract need only guide or direct the parties to a document in order to incorporate that document.") (citation modified). Because the Privacy Policy directs users to these incorporated disclosures, they are "part of a singular whole" that should be considered together in assessing Plaintiffs' claims about the sufficiency of Meta's disclosures. *Hammerling v. Google LLC*, 2022 WL 17365255, at *3 (N.D. Cal. Dec. 1, 2022) (finding that an additional disclosure that "pop[ped] up" within a privacy disclosure was incorporated by reference, as the materials were "part of a singular whole" that "must be considered together, particularly where Plaintiffs complain that they were not adequately informed" about Defendants' data collection practices), *aff'd*, 2024 WL 937247 (9th Cir. Mar. 5, 2024); *see also In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 791 (N.D. Cal. 2019) (finding that a data use policy was incorporated into a contract where it was listed as an additional document that the user "may also want to review"); *Brown*, 2021 WL 6064009, at *9-10 (finding that an "Incognito Splash Screen" was incorporated by reference into Google's Privacy Policy because the policy "guid[ed]" users to the screen).

Like the policies that incorporate them, the referenced webpages provide critical context for Plaintiffs' claims about Meta's disclosures and thus "form[] the basis" of Plaintiffs' claims. *Khoja*, 899 F.3d at 1002 (internal quotation marks omitted). As explained above, Plaintiffs

---

[4] This same interface is also cross-referenced elsewhere in the Privacy Policy, in a section labeled, "How can you manage or delete your information and exercise your rights?" That section directs users to "a variety of tools to view, manage, download, and delete your information," including with respect to "Off-Meta Activity." Clicking "Off-Meta Activity" displays the user interface as described above.

challenge the adequacy of disclosures describing how off-site interactions may be associated with users' Facebook or Instagram accounts through the functionality at issue. The Help Center page (Ex. F) expressly informs users that businesses share information, including "cookies and advertising device IDs," that "help Facebook connect those interactions with a person's Facebook account so that [Meta] can improve their ads and help businesses measure ad effectiveness." Ex. F at 1. In doing so, it speaks directly to whether users were informed of, and therefore could consent to, the challenged matching. Similarly, the "Your activity off Meta technologies" user control interface (Ex. G) likewise reflects that Meta engages in such matching and that, if users wish to restrict Meta's ability to do so, Meta provides specific user controls for this purpose. Meta's disclosure of these controls bears directly on the reasonableness of Plaintiffs expectation that Meta would not or could not match off-site activity on their Android devices to their Meta accounts. ¶ 47. Because these pages form part of the very disclosures that Plaintiffs put at issue, "the disclosures form the basis of the claims themselves" and are therefore appropriately deemed incorporated by reference. *Gershfeld*, 2023 WL 334015, at *1; *see also Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (finding a billing agreement incorporated by reference where its terms were "integral" to the complaint, despite not being referenced explicitly).

### 3. Meta Business Help Center Article

Finally, the Meta Business Help Center article (Ex. H) should be deemed incorporated by reference. Plaintiffs expressly cite to the article for the proposition that "Meta, itself, explains that [cookies] and/or other 'customer information parameters,' are ultimately "matched to Meta accounts." ¶ 32 & n.26. As with the Privacy Policy, the article forms the basis of Plaintiffs' claims, as it concerns Meta's identity-matching practices and what Meta explains to users about those practices. Because the article is "directly referenced within the [complaint]" and "form[s] the basis of Plaintiff's claims," the article is "incorporated by reference." *Moates v. Facebook Inc.*, 2024 WL 2853976, at *1 n.1 (N.D. Cal. Apr. 3, 2024) (Lin, J.); *see also Phillips v. Brooklyn Bedding LLC*, 2024 WL 2830663, at *5 n.2 (N.D. Cal. Mar. 28, 2024) (Lin, J.) (taking judicial notice of a notice letter where the letter was "directly referenced within [the complaint]" and "integral to [Plaintiff's] claims").

Moreover, Plaintiffs should not be able to quote from the article selectively while omitting portions helpful to Meta's arguments. In citing the article, Plaintiffs vaguely acknowledge that websites using Meta Pixel code can transmit other "customer information parameters" to Meta independent of the "_fbp" cookie, but they fail to detail what those parameters are. The article explains that those parameters include data elements commonly available to websites through their interactions with users, such as user email addresses and phone numbers, and how these parameters can be used to "help improve the rate at which [] events are matched to Meta accounts." Ex. H at 2. This information directly undermines Plaintiffs' allegation that they had a reasonable expectation that—absent the collection of the _fbp cookie through the challenged functionality—Meta could not track their browsing activity on their mobile devices. ¶¶ 95, 101, 107, 113. Plaintiffs cannot cherry-pick from the article to support its claims while simultaneously omitting portions of the article that undercut their claims. *Khoja*, 899 F.3d at 1002; *see also Good Meat Project v. GOOD Meat, Inc.*, 716 F. Supp. 3d 783, 806–07 (N.D. Cal. 2024) (Lin, J) (allowing Plaintiffs to cite "only selected portions of [a] website" would "trigger the dangers that the [incorporation by reference] doctrine seeks to prevent"); *SafeCast Ltd. v. Google, LLC*, 703 F. Supp. 3d 1041, 1046 n.1 (N.D. Cal. 2023) (finding Google policy webpages that Plaintiff "selectively quote[d]" were incorporated by reference because "Google's purported representations [were] explicitly quoted and cited and are central to" Plaintiffs' allegations).

**B. The Proffered Exhibits Are Also Subject To Judicial Notice**

The exhibits at issue are also judicially noticeable as publicly available documents[5] that are "not subject to reasonable dispute" and whose contents "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

"In general, websites and their contents may be judicially noticed." *Hirlinger v. WP Co.*

[5] The user interface (Exhibit G) is available to anyone with a Facebook account—including Plaintiffs, ¶¶ 93, 99, 105, 111, and any member of the public can sign up for a Facebook account. *Cf. Petersen v. TriplePoint Venture Growth BDC Corp.*, 2024 WL 5384678, at *3-4 (N.D. Cal. Aug. 7, 2024) (taking judicial notice of articles from New York Times and Bloomberg, which were located behind a paywall); *Shelton v. Ekchian*, 2024 WL 5717969, at *4 (C.D. Cal. Nov. 15, 2024) (taking judicial notice of an email sent by Defendant to members of a school district because it could "likely be accurately and readily determined as an authentic document").

*LLC*, 2024 WL 2941630, at *2 (N.D. Cal. June 10, 2024); *see, e.g.*, *Schuster v. Swinerton, Inc.*, 2025 WL 1069887, at *2 (N.D. Cal. Apr. 8, 2025) (taking judicial notice of website); *Delgado v. Meta Platforms, Inc.*, 718 F. Supp. 3d 1146, 1158 n.4 (N.D. Cal. 2024) (taking judicial notice of Meta's Privacy Policy and Terms of Service); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1084 n.8 (N.D. Cal. 2023) (taking judicial notice of Meta's "[Terms of Service], Business Tools Terms, Commercial Terms, Privacy Policy and Cookies Policy"); *Hammerling*, 2022 WL 17365255, at *4 (taking judicial notice of Google Help Center webpage); *Brown*, 2021 WL 6064009, at *6-7 (taking judicial notice of various Google privacy policies and terms of service); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1068 n.3 (N.D. Cal. 2016) (taking judicial notice of privacy policies).

The Court need not take judicial notice of these webpages for the truth of their contents, but only for the existence of and content of the disclosures made. The content of the disclosures is by itself relevant to the plausibility of Plaintiffs' claims, as those claims rest on what Meta allegedly disclosed to users about its collection and use of information from third-party websites. *See In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1026 n.2 (N.D. Cal. 2021) (taking judicial notice of "the fact that [Zoom's Terms of Service and Privacy Statements] exist") (citation omitted); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 189-90 (taking judicial notice of the fact that Google "publicly disclosed" as of a certain date "to users that Location History is an 'opt-in only' feature"); *B.W. v. Airbnb, Inc.*, 2025 WL 3764662, at *1 n.1 (N.D. Cal. Dec. 30, 2025) (taking judicial notice of "the existence of [Defendant's] terms but not for the truth of any assertions contained therein"); *SEB Inv. Mgmt. AB v. Symantec Corp.*, 2019 WL 2491935, at *11 (N.D. Cal. June 14, 2019) (taking judicial notice of "the fact that [certain] disclosures were made" in a proxy statement, rather than the truth of the contents).

Accordingly, because the proffered exhibits are publicly available webpages, they are not subject to reasonable dispute, and their contents can be accurately and readily determined, they are appropriately subject to judicial notice to establish the existence of and contents of the disclosures made.

## III. CONCLUSION

For the foregoing reasons, Meta respectfully requests that the Court consider the exhibits attached to the Turner Declaration submitted in connection with Meta's motion to dismiss.

Dated: January 30, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By */s/ Serrin Turner*

Serrin Turner (*pro hac vice*)
*serrin.turner@lw.com*
Nicolas Luongo (*pro hac vice* pending)
*nicolas.luongo@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Brad Baglien (*pro hac vice*)
*brad.baglien@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600