**BURSOR & FISHER, P.A.**
Philip L. Fraietta (SBN 354768)
50 Main St., Ste. 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Michael W. Sobol (SBN 19485)
Michael K. Sheen (SBN 288284)
Amelia A. Haselkorn (SBN 339633)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

**MILBERG, PLLC**
Gary M. Klinger (*pro hac vice*)
William J. Edelman (SBN 285177)
227 West Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Facsimile: (786) 879-7520

**AHDOOT & WOLFSON, PC**
Tina Wolfson (SBN 174806)
Theodore W. Maya (SBN 223242)
Alyssa D. Brown (SBN 301313)
Sarper Unal (SBN 341739)
Lisa Cintron (SBN 356009)
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

[Additional counsel listed on signature pages]

*Interim Class Counsel*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

*In re Meta Android Privacy Litigation*,

This document relates to:

All Actions

Case No. 3:25-cv-04674-RFL

**PLAINTIFFS' OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**

The Honorable Rita F. Lin

Courtroom: Courtroom 15, 18th Floor
Date: March 24, 2026
Time: 10:00 a.m.

Complaint Filed: November 26, 2025
Trial Date: None Set

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 1

III. ARGUMENT ..... 3

A. Legal Standard ..... 3

B. Plaintiffs Adequately Allege Google's Negligence. ..... 3

1. Google Owed a Duty to Protect the Security of Plaintiffs' Data from Meta. ..... 3

a. Google Maintains a Special Relationship with Plaintiffs. ..... 4

b. The *Rowland* Factors Support Enforcing Google's Duty to Reasonably Protect Plaintiffs' Personal Data. ..... 6

2. Plaintiffs Sufficiently Allege Breach. ..... 7

3. Plaintiffs Sufficiently Allege Google's Failure to Implement Stronger Protections and Monitor Localhost Communications Proximately Caused the Alleged Harm. ..... 10

C. Plaintiffs State a Claim for Negligent Misrepresentation ..... 12

1. Rule 9(b)'s Heightened Pleading Standard Does Not Apply. ..... 12

2. Plaintiffs State a Plausible Claim Under Rule 8. ..... 13

a. Falsity ..... 14

b. Puffery ..... 15

c. Justifiable Reliance ..... 17

d. No Reasonable Belief in Truth ..... 18

3. In the Alternative, Plaintiffs Allege a Claim for Negligent Misrepresentation Under Rule 9(b)'s Heightened Standards ..... 19

IV. CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMI - Gov't Emps. Provident Fund Mgmt. Co. Ltd. v. Alphabet Inc.*,
2024 WL 4353637 (N.D. Cal. Sept. 3, 2024) ... 16

*Apollo Capital Fund LLC v. Roth Capital Partners, LLC*,
158 Cal. App. 4th 226 (2007) ... 13, 18

*Aschroft v. Iqbal*,
556 U.S. 662 (U.S., 2009) ... 3

*Autodesk, Inc. v. Dassault Sys. Solidworks Corp.*,
685 F. Supp. 2d 1001 (N.D. Cal. 2009) ... 16

*Avakian v. Wells Fargo Bank, N.A.*,
2019 WL 3064426 (C.D. Cal. May 10, 2019) ... 20

*Avakian v. Wells Fargo Bank, N.A.*,
827 F. App'x 765 (9th Cir. 2020) ... 13, 20

*Backhaut v. Apple, Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014) ... 17

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ... 3, 6, 7

*Baton v. Ledger SAS*,
740 F. Supp. 3d 847 (N.D. Cal. 2024) ... 10, 11

*Brown v. USA Taekwondo*,
11 Cal. 5th 204, 483 P.3d 159 (2021) ... 3, 4, 5

*Cal. Pub. Emps.' Ret. Sys. v. Moody's Investors Serv., Inc.*,
226 Cal.App.4th 643 (2014) ... 17

*Carpenter v. United States*,
585 U.S. 296 (2018) ... 10

*David v. George Chiala Farms, Inc.*,
2025 WL 3124339 (N.D. Cal. Nov. 7, 2025) ... 12

*Dey v. Robinhood Markets, Inc.*,
780 F. Supp. 3d 882 (N.D. Cal. 2025) ... 13

**TABLE OF AUTHORITIES**
**(continued)**

**Page**


*Dey v. Robinhood Markets, Inc., et al.*,
2025 WL 1649160 (N.D. Cal. Mar. 5, 2025) ..... 13

*Flores-Mendez v. Zoosk, Inc.*,
No. C 20-04929 WHA, 2021 WL 308543 (N.D. Cal. Jan. 30, 2021) ..... 8

*Girard v. Delta Towers Joint Venture*,
20 Cal. App. 4th 1741 (1993) ..... 4

*Glen Holly Ent., Inc. v. Tektronix, Inc.*,
100 F. Supp. 2d 1086 (C.D. Cal. 1999) ..... 15

*Harris v. County of Orange*,
682 F.3d 1126 (9th Cir. 2012) ..... 3

*Hockey v. Medhekar*,
30 F. Supp. 2d 1209 (N.D. Cal. 1998) ..... 15

*I-Enters. Co., LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*,
2005 WL 1661959 (N.D. Cal. July 15, 2005) ..... 15

*Impac Warehouse Lending Grp. v. Credit Suisse First Bostn LLC*,
270 F. App'x 570 (9th Cir. 2008) ..... 4

*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024) ..... 3, 6, 7, 8

*In re All Terrain Vehicle Litig.*,
771 F. Supp. 1057 (C.D. Cal. 1991) ..... 16

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) ..... 16

*In re Palo Alto Networks, Inc. Sec. Litig.*,
2025 WL 1093247 (N.D. Cal. Apr. 11, 2025) ..... 15

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ..... 16

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
313 F. Supp. 3d 1113 (N.D. Cal. 2018) ..... 10

*Kelley v. Rambus, Inc.*,
384 F. App'x 570 (9th Cir. 2010) ..... 13

*Levit v. Nature's Bakery, LLC*,
767 F. Supp. 3d 955 (N.D. Cal. 2025) ..... 12

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.*,
225 F. Supp. 3d 1034 (N.D. Cal. 2016) .......... 18

*Mosco v. Motricity, Inc.*,
649 F. App'x 526 (9th Cir. 2016) .......... 15

*Najarian Holdings LLC v. Corevest Am. Fin. Lender LLC*,
2020 WL 5993225 (N.D. Cal. Oct. 9, 2020) .......... 12, 13

*Nguyen v. Simpson Strong-Tie Co., Inc.*,
2020 WL 5232563 (N.D. Cal. Sept. 2, 2020) .......... 19

*Nor-Cal Moving Servs. v. Paylocity Corp.*,
2025 WL 2076620 (N.D. Cal. July 23, 2025) .......... 15

*Ochoa v. Zeroo Gravity Games LLC,*
2023 WL 4291974 (C.D. Cal. Feb. 1, 2023) .......... 19

*Patel v. Citibank Corp.*,
No. SACV191539DOCKES, 2019 WL 7987113 (C.D. Cal. Sept. 27, 2019) .......... 4

*Petersen v. Allstate Indem. Co.*,
281 F.R.D. 413 (C.D. Cal. 2012) .......... 12

*Pinky's Iron Doors LLC v. Architectural Testing, Inc.*,
2025 WL 4059440 (C.D. Cal. Dec. 22, 2025) .......... 12

*Puri v. Khalsa*,
674 F. App'x 679 (9th Cir. 2017) .......... 13

*Regents of Univ. of California v. Superior Ct.*,
4 Cal. 5th 607 (2018) .......... 5

*Richter v. CC-Palo Alto, Inc.*,
176 F. Supp. 3d 877 (N.D. Cal. 2016) .......... 15

*Rowe v. Educ. Credit Mgmt. Corp.*,
559 F.3d 1028 (9th Cir. 2009) .......... 3

*Rowland v. Christian*,
69 Cal. 2d 108 (1968) .......... 5, 6

*Saari v. Hygenic Corp.*,
2019 WL 994403 (C.D. Cal. Jan. 9, 2019) .......... 12

*San Francisco Ladies' Prot. & Relief Soc'y v. RPM Billing, LLC*,
No. 25-CV-06090-RFL, 2025 WL 3280892 (N.D. Cal. Nov. 25, 2025) .......... 13

## TABLE OF AUTHORITIES
## (continued)

**Page**

*Schmitt v. SN Servicing Corp.*,
No. 21-CV-03355-WHO, 2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) ........ 7, 8

*Smith–Victor Corp. v. Sylvania Electric Products, Inc.*,
242 F.Supp. 302 (N.D.Ill.1965) ........ 16

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ........ 3

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) ........ 3

*State Dep't of State Hosps. v. Superior Ct.*,
61 Cal. 4th 339 (2015) ........ 10

*U.S. Cap. Partners, LLC v. AHMSA Int'l, Inc.*,
2013 WL 594285 (N.D. Cal. Feb. 14, 2013) ........ 12

*User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 3, 11

*Villarroel v. Recology Inc.*,
775 F. Supp. 3d 1050 (N.D. Cal. 2025) ........ 17

*Welte v. Wells Fargo Bank Nat'l Ass'n*,
189 F. Supp. 3d 965 (C.D. Cal. 2016) ........ 4

**<u>Rules</u>**

Fed. R. Evid. 407 ........ 19

## I. INTRODUCTION

Fundamental flaws in Google's Android operating system enabled Meta to secretly track Android users in direct contradiction to their expressed preferences and Google's promises. *See* Consolidated Class Action Complaint ("Compl.") ¶¶ 83-90. Google well understands the sensitivity of its users' browsing data—this is why it purported to build sandboxing protections into the Android ecosystem and promised users that they could maintain the privacy and security of such information. Nonetheless, Google designed and developed the Android operating system in a manner that allowed Meta's (and potentially others') apps to access and abuse localhost ports with little or no user knowledge or consent. Meta was able to circumvent the privacy and security protections that Google promised its users, and thus obtain and monetize Android users' sensitive data without their permission.

Under these circumstances, Plaintiffs' claims against Google for negligence and negligent misrepresentation are well-pled, and Google's motion to dismiss should be denied.

## II. BACKGROUND

Google promised its users that its Android operating system "allows users to 'choose when to share certain sensitive data with apps you download.'" *Id.* ¶ 77. However, it is now clear that users were not able to avoid the privacy violations alleged in the Complaint because Google "designed and implemented the Android operating system in a manner such that apps can access localhost ports with little or no user knowledge or consent." *Id.* ¶¶ 77, 54.

"To protect mobile device users' privacy and security, the Android operating system 'sandboxes' apps into their own silos to prevent unauthorized access between them." *Id.* ¶ 2. Sandboxing is an industry standard approach that, when properly functioning, works in part to prevent apps from collecting data from and directly targeting mobile device users as they browse online. *Id.* ¶¶ 2, 5. "Localhost" communication ports are internal communication channels that are intended to allow Android programs to communicate with one another safely and appropriately without those communications leaving the device. *Id.* ¶¶ 52-53.

Due to flaws in Google's design and implementation of the Android operating system, Meta was able to exploit these purportedly internal communication channels. *Id.* ¶¶ 51-54. From

September 2024 through at least June 2, 2025, Meta gained unpermitted access to localhost communication ports by exploiting vulnerabilities in the Android operating system. *Id.* ¶ 4-5, 48-49. As a result, when an Android user with a modified version of one of Meta's social media apps (e.g., Facebook or Instagram) (the "Modified Meta Apps") installed on their mobile device visited a webpage with a modified version of the Meta Pixel (the "Modified Pixel"), Meta linked the user's otherwise anonymous browsing activity (collected by the Modified Pixel) to the personal information on their Meta accounts (available through the Meta Apps). *See id.* Meta's actions also bypassed user-initiated privacy protections. *See id.* ¶¶ 5, 64, 72.

Meta used this backdoor to collect vast quantities of de-anonymized browsing data from millions of people who were logged into the Facebook or Instagram app on the device. *Id.* ¶ 61. By exploiting unsecured localhost channels, Meta "exposed user data to potentially malicious actors or other apps that could 'listen' for this information in the same way the Facebook and Instagram apps were modified to do." *Id.* ¶ 64 (quoting Narseo Vallina-Rodriguez, et al., *Disclosure: Covert Web-to-App Tracking via Localhost on Android*, LOCAL MESS, https://localmess.github.io/ [https://perma.cc/P2GG-MR2D]).[1] Meta specifically targeted Android-based mobile devices due to Google's imposition of "fewer controls on local host communications and background executions of mobile apps." *Id.* ¶ 6 (citation and quotation mark omitted). Meta could not have achieved this egregious privacy violation absent the vulnerabilities Google built into its Android operating system. *See id.* ¶¶ 1, 6.

Google's conduct failed to implement industry standards by allowing Meta to perpetrate what was effectively a data breach on Android mobile devices across the country, through unfettered access to localhost ports without the appropriate safety measures or monitoring. Google further failed to monitor for and timely notify users of Meta's resulting data breach. Plaintiffs' allegations are exceedingly specific, pointing to the precise ports Meta exploited at any given time, and sufficiently plausible, identifying the ways in which Google's architecture failed to meet standard industry practices and user expectations. Accordingly, Plaintiffs should be afforded an

[1] Google submitted the cited article as Exhibit 2 to its Request For Judicial Notice in Support of its Motion to Dismiss (ECF 104-3). Plaintiffs do not oppose Google's Request for Judicial Notice.

opportunity to engage in discovery to uncover the full extent of Google's negligence and to explain to a jury the extent of Google's failure to reasonably protect users' privacy.

## III. ARGUMENT

### A. Legal Standard

At the pleading stage, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009) (citation and quotation omitted). A complaint need only "contain[] 'sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face.'" *Harris v. County of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Thus, "[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [a] plaintiff, both of which are plausible, [a] plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### B. Plaintiffs Adequately Allege Google's Negligence.

To state a claim for negligence in California, a "plaintiff must show that the defendant had a duty to use due care, that [the defendant] breached that duty, and that the breach was the proximate or legal cause of the resulting injury.'" *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 213, 483 P.3d 159, 164 (2021) (quotation and citations omitted).

#### 1. Google Owed a Duty to Protect the Security of Plaintiffs' Data from Meta.

"[T]here is abundant authority that California law recognizes a duty on companies to take reasonable steps to protect all sensitive information it obtains from individuals." *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 634 (N.D. Cal. 2024) (citations omitted) ("*Accellion*"); *see also Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 39 (N.D. Cal. 2019) (finding Facebook owed a duty "to handle its users' sensitive information with care"); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 915 (S.D. Cal. 2020) (finding "a company that possesses peoples' personal and medical information" owes a duty to protect that information); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019)

("*Facebook Privacy Litigation*") (finding "Facebook had a responsibility to handle its users' sensitive information with care").

Google ignores this abundant authority and instead cites a series of entirely inapposite cases. *See* Mot. 14 (citing *Impac Warehouse Lending Grp. v. Credit Suisse First Bostn LLC*, 270 F. App'x 570, 572 (9th Cir. 2008) (pertaining to fraudulent debt reselling market); *Patel v. Citibank Corp.*, 2019 WL 7987113, at *1, *6 (C.D. Cal. Sept. 27, 2019) (finding no special relationship between Google and plaintiff who alleged a scammer called her and convinced her to transfer her life savings through various means, including Google gift cards); *Girard v. Delta Towers Joint Venture*, 20 Cal. App. 4th 1741, 1749 (1993) (concerning a "garden-variety landlord-tenant relationship"); *Welte v. Wells Fargo Bank Nat'l Ass'n*, 189 F. Supp. 3d 965, 975 (C.D. Cal. 2016) (considering whether a financial institution owed a duty to a borrower pursuant to separate standard assessed under the *Biakanja* factors, not the *Rowland* factors at issue here)).

Google well understands the sensitivity of its users' browsing activity (including related identifiers)—that is why it implemented (at least some) sandboxing protections and promised users that they could maintain the privacy and security of such information by implementing appropriate user-initiated privacy protections controls that Google provides. Compl. ¶¶ 5, 79. The data breach cases cited above support the proposition that Google, which controls the barriers protecting sensitive user data and stands between its users and entities such as Meta who would seek to obtain an exploit that data, owes its users a duty to employ reasonable measures to ensure that the data is maintained privately and securely, as Google promised. Because Google designed and implemented the Android operating system in a manner that allowed apps to access localhost ports with little or no user knowledge or consent, thereby circumventing the privacy and security protections that Google promised its users, Google not only owed, but breached such duties. Compl. ¶ 54.

**a. Google Maintains a Special Relationship with Plaintiffs.**

In addition, Plaintiffs sufficiently plead the existence of a special relationship under the governing test. Where a special relationship exists, "a defendant may have an affirmative duty to protect the plaintiff from harm at the hands of a third party." *Brown*, 11 Cal. 5th at 215. Courts use

a two-step inquiry to determine whether such a relationship exists. *Id.* at 209. "First, the court must determine whether there exists a special relationship between the parties or some other set of circumstances giving rise to an affirmative duty to protect." *Id.* "Second, if so, the court must consult the factors described in *Rowland* to determine whether relevant policy considerations counsel limiting that duty." *Id.* (citing *Rowland v. Christian*, 69 Cal. 2d 108, 113 (1968)).

The California Supreme Court has identified four common features of special relationships: (1) "the relationship has an aspect of dependency in which one party relies to some degree on the other for protection;" (2) the other party "has superior control over the means of protection;" (3) special relationships have "defined boundaries" such that they are limited to a "community, not the public at large;" and (4) "many special relationships especially benefit the party charged with a duty of care." *Regents of Univ. of California v. Superior Ct.*, 4 Cal. 5th 607, 620-21 (2018). All four features are present here.

***First***, Plaintiffs' relationship with Google is one of dependency. Google itself recognizes that "your life is on your phone." Compl. ¶ 262. Plaintiffs rely on Google to take the necessary steps to protect the personal information they entrust to Google through the use of their Android devices.

***Second***, Plaintiffs cannot independently inspect or secure the Android operating system. *See id.* ¶ 251. Indeed, there is "no way for users to prevent this kind of communication on their device" because access to the localhost communication ports must be limited within the operating system itself. *See id.* ¶ 91. Even sophisticated web browser developers were locked in "a constant arms race" against Meta's attacks because those web browser developers were not in any position to once and for all correct the vulnerabilities that persisted within the Android operating system. *Id.* ¶ 68. Only Google could do that. *See id.* ¶¶ 83-90, 253-254. In fact, Google routinely develops software "patches" to prevent other privacy and security harms. *See id.* ¶ 252. Thus, Google is undeniably in a superior position to prevent the harms that occurred here.

***Third***, the boundaries of the relationship are clear as they are limited to easily identifiable users of Android devices. *See id.* ¶ 75.

***Fourth***, and finally, the relationship especially benefits Google as customers purchase and

continue to upgrade their Android devices. Therefore, consistent with the large body of case law recognizing companies' duty to safeguard their customers' personal information, Google owes a duty to Android users to reasonably protect users' confidential information and to provide prompt and complete notice of any unauthorized access or misuse of this data.

**b. The *Rowland* Factors Support Enforcing Google's Duty to Reasonably Protect Plaintiffs' Personal Data.**

Courts next assess whether there is any reason to limit the special relationship based upon the *Rowland* factors, which include:

> the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

*Rowland*, 69 Cal. 2d at 113. Numerous courts have imposed a duty on technology companies to take reasonable measures to protect the personal information they receive, based on the *Rowland* factors. *See, e.g.*, *Accellion,* 713 F. Supp. 3d at 635-636 (collecting cases finding the same); *Bass*, 394 F. Supp. 3d at 1039 ("The lack of reasonable care in the handling of personal information can foreseeably harm the individuals providing the information.").

The *Rowland* factors warrant precisely the same conclusion here. Google designed, and was therefore aware, that the Android operating system permitted apps to access localhost ports with little or no user knowledge or consent or system oversight. *See id.* ¶ 54. Its design decisions were different from those of well-known competitor Apple, which for example more tightly restricted background activity for apps in ways that would have triggered privacy warnings if Meta's de-anonymization scheme were tried on an iOS device. *Id.* ¶ 86. Given this context, Google could foresee the exploitation of such vulnerabilities in its localhost communication ports. After all, Google's software handles highly valuable and often-targeted personal data. *See id.* ¶ 152. Moreover, as a result of Google's fundamentally flawed architecture, Meta gained access to these ports and obtained Plaintiffs' private user data. *See id.* ¶¶ 52-54, 83-90. Google is the only party that was able to fully prevent this type of data breach because Google maintains full control over the structure of its Android operating system to the exclusion of Android users.

Courts in this District have found that, "[f]rom a policy standpoint, to hold that [a technology company] has no duty of care here 'would create perverse incentives for businesses who profit off the use of consumers' personal data to turn a blind eye and ignore known security risks.'" *Accellion*, 713 F. Supp. 3d at 636 (quoting *Bass*, 394 F. Supp. 3d at 1039). The same perverse incentives would arise here if Google were not held accountable for its failure to reasonably address the foreseeable security risks of its localhost port access architecture.

That web developers failed to comment on Meta's precise tracking method for over a year does not undercut the foreseeability of the vulnerability. *See* Mot. 4. Failure to properly implement sandboxing was a recognized, foreseeable risk to users' security and privacy, which is why Google purported to adopt sandboxing protocols in the first place. Compl. ¶¶ 50-51. Meta's tracking methods were precisely the type of harm that Google's flawed sandboxing design permitted. *Google*, not web developers, should have eliminated this access or, at the very least, monitored apps accessing localhost communications.[2]

Accordingly, Google owed a duty to Plaintiffs and putative Class Members to take reasonable measures to protect their confidential information and to monitor for and provide prompt notice of any unauthorized access or misuse of its Android operating system.

**2. Plaintiffs Sufficiently Allege Breach.**

Google negligently designed an overly permissive localhost communications framework, failed to implement and enforce adequate safety controls on localhost communications, and failed to adequately monitor localhost communications and timely notify users of the breach. *See* Compl. ¶¶ 253-256. In the data breach context, the plaintiffs' "burden to plead a corresponding breach based on [defendant's] inadequate security measures in not high." *Schmitt v. SN Servicing Corp.*, 2021 WL 3493754, at *5 (N.D. Cal. Aug. 9, 2021). Courts in this District have explained:

[2] Indeed, Google recently updated the Android operating system to improve security and user privacy in this respect. Google indicates that "To improve platform security and user privacy, Android 17 introduces a new install-time permission, USE_LOOPBACK_INTERFACE. This change restricts cross-app and cross-profile communication over the loopback interface (for example, 127.0.0.1 or ::1), which was previously implicitly allowed with the INTERNET permission." Behavior Changes: Apps targeting Android 17 or Higher, https://developer.android.com/about/versions/17/behavior-changes-17#localhost-protections.

> The consuming public has come to believe that the internet companies, which take in their private information, have taken adequate security steps to protect the security of that information from any and all hackers or interventions. The ordinary consumer, however, has no clue what internet companies' security steps are. There would be no way for users to know what security steps were actually in place. Therefore, when a breach occurs, *the thing speaks for itself*. The breach would not have occurred but for inadequate security measures, or so it can be reasonably inferred at the pleadings stage.

*Id.* (quoting *Flores-Mendez v. Zoosk, Inc.*, 2021 WL 308543, at *4 (N.D. Cal. Jan. 30, 2021) (emphasis in original)). That same standard applies here.

Plaintiffs' allegations exceed this District's low threshold to establish breach of a duty in the context of a data breach. Plaintiffs allege significantly more than the mere fact that a data breach occurred—they have detailed the technical flaw at issue. Specifically, Google designed the Android operating system such that apps can access localhost ports with little or no user knowledge or consent, and failed to supplement this design with a security protocol that would ensure such access was not misused. *See* Compl. ¶¶ 54, 85. While Meta took advantage of these flaws, it was Google that left the door wide open to this attack. *See id.* ¶¶ 55, 84-90.

Plaintiffs even allege the precise ways in which Google's architecture was flawed. *See id.* ¶¶ 84-91 (detailing Google's overly permissive model, weak sandboxing, and inadequate privacy protections). Plaintiffs further allege, in extensive detail, the ways Meta exploited Google's design flaws. *See id.* ¶¶ 47-49, 52-55, 57 (alleging Meta relied on HTTP requests sent through port 12387), 58 (relying on WebSocket requests sent through port 12387), 59 (using SDP munging through ports 12580-12585 using STUN message), 60 (same but using TURN message), 62 (illustrating the breach).

That outside researchers identified the issue first suggests that Google was not sufficiently monitoring the safety of its operating system. Google allowed this to continue for over a year and acted only when outside researchers publicized the issue. *See id.* ¶ 65; *see also* Mot. 4 ("Plaintiffs acknowledge that Google responded after researchers publicly exposed Meta's scheme"). These allegations are sufficient to support the conclusion that Google breached its duty. *See, e.g.*, *Accellion*, 713 F. Supp. 3d at 637 (finding allegations of vulnerabilities combined with data breach sufficient to plausibly allege that defendant breached its duty of reasonable care to protect plaintiffs' confidential information).

Furthermore, Google should have known that its failure to provide reasonable safeguards (like monitoring and controlling access to localhost ports) would leave users' highly valuable confidential information vulnerable to unauthorized attack. Indeed, Apple is aware of this concern and requires explicit user approval before permitting any communications between isolated sandboxes. *Id.* ¶ 88. Any attempt by Meta to listen to localhost ports on an Apple device would trigger a privacy warning. *Id.* ¶ 86.

Google misconstrues Plaintiffs' argument about the differences between Google's and Apple's designs. Google was not required make the same design choices as Apple. Nor was Google required to implement the most restrictive security measures possible, as Google mischaracterizes Plaintiffs' argument. *See id.* at 15. Rather, the fact Google's largest competitor provided safeguards against this precise vulnerability suggests that Google should have known to take reasonable precautions to safeguard users' personal data here. Moreover, Google's design choice resulted in data breaches that bypassed user-initiated privacy protections. *See id.* ¶¶ 5, 64 (bypassing private browsing mode and VPN use); *id.*at 72 (permitting access even where users cleared cookies or other browsing data). Therefore, Google cannot insist that the features available through Apple are merely an immaterial design choice. *See* Mot. 14-15.

Plaintiffs sufficiently allege Google breached its duties. Google "failed to implement and enforce adequate controls on localhost communications, background executions, and access to sensitive identifiers," and "failed to adopt timely safeguards and policies" which "other industry participants had already implemented," sufficiently allege Google's breach of its duties. Compl. ¶ 254.[3]

---

[3] Since the filing of the Complaint, additional facts have come to light that support Plaintiffs' allegations in this regard. On information and belief, in response to Meta's misconduct, Google recently implemented changes to the Android operating system to limit localhost access in a manner that, if implemented earlier, could have prevented the harm Plaintiffs allege they suffered. *See, e.g.*, <https://developer.android.com/about/versions/17/behavior-changes-17#localhost-protections> (last visited February 16, 2026).

### 3. Plaintiffs Sufficiently Allege Google's Failure to Implement Stronger Protections and Monitor Localhost Communications Proximately Caused the Alleged Harm.

Under California law, proximate cause has two aspects. *See State Dep't of State Hosps. v. Superior Ct.*, 61 Cal. 4th 339, 352-53 (2015). The first is cause in fact, which is "sometimes referred to as 'but-for' causation." *Id.* at 352 (citation omitted). The second aspect "focuses on public policy considerations," including "the degree of connection between the conduct and the injury." *See id.* at 353. "Ordinarily, proximate cause is a question of fact which cannot be decided as a matter of law from the allegations of a complaint." *Id.* (citation omitted).

"[A]n actor may not be liable for a third party's actions if the actor lack[s] the legal or practical ability to control such criminal actions of third parties." *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 910 (N.D. Cal. 2024), motion to certify appeal granted, 2025 WL 1866348 (N.D. Cal. July 7, 2025) (quotations and citation omitted). "In data breach cases, where users' data was stolen by hackers, courts often find that causation exists where protections are inadequate." *Id.*; *see also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1132 (N.D. Cal. 2018) (finding "it was plainly foreseeable that [p]laintiffs would suffer injury if [d]efendants did not adequately protect" plaintiffs' personal information).

Absent Google's built-in vulnerabilities and inadequate protections, Meta could not have accessed users' localhost communications undetected for over a year in the ways Plaintiffs allege here. It is a well-established fact that mobile devices "are such a pervasive and insistent part of daily life that carrying one is indispensable to participation in modern society." *See* Compl. ¶ 46 (quoting *Carpenter v. United States*, 585 U.S. 296, 298 (2018) (citation and internal quotation marks omitted)). Moreover, the personal data at issue here is undoubtedly highly valuable. In 2024, Meta generated over $164 billion in annual revenue that was almost entirely from the advertising capabilities built around the personal data Meta collects. *See id.* ¶¶ 19, 252. Such valuable information is routinely targeted for unauthorized access. *See id.* ¶ 252. Indeed, Google monetizes these privacy concerns by marketing and publicly guaranteeing the safety of its Android devices. *See* Compl. ¶¶ 79-81.

Accordingly, in leaving the localhost communications ports open to outside app developers

without any additional protections or oversight, Google opened the door for app developers to listen in on users' localhost communications and collect their valuable personal data. It was plainly foreseeable that app developers, faced with uninhibited access to valuable personal data, would attempt to exploit that opening. This is precisely the harm that sandboxing is supposed to prevent. Accordingly, Plaintiffs plausibly allege that Google's inadequate protections and built-in vulnerabilities proximately caused the data breach that occurred here.

Google again fails to cite a single case addressing proximate cause in the context of a data breach. *See* Mot. 16-18. Moreover, Google's assertion that Meta's actions are a superseding cause directly contradicts findings in this District. For example, in *Facebook Privacy Litigation*, the court found that plaintiffs plausibly alleged that Facebook's actions were a proximate cause of the data breach:

> [C]ontrary to Facebook's argument, the plaintiffs do not seek to hold Facebook liable for the conduct of the app developers and business partners; they seek to hold the company liable for its own misconduct with respect to their information. Specifically, the plaintiffs allege that they entrusted Facebook with their sensitive information, and that Facebook failed to use reasonable care to safeguard that information, giving third parties access to it without taking any precautions to constrain that access to protect the plaintiffs' privacy, despite assurances it would do so.

402 F. Supp. 3d at 799; *see also Baton*, 740 F. Supp. 3d at 910-11 (finding plaintiffs plausibly alleged proximate causation in alleging data was stolen by third-party hackers because of defendants' failure to monitor and "implement stronger security measures"). For the very same reasons, Meta's actions are not a superseding cause that breaks the chain of causation. Google failed to use reasonable care to safeguard users' private information, allowing third parties to access localhost communication ports without taking any precautions to constrain that access and protect Plaintiffs' privacy despite various assurances that Google would in fact protect Plaintiffs' private data.

Google argues that Plaintiffs attempt to impose "limitless liability for every creative misuse of its products by bad actors." *See* Mot. 17-8. That is wrong. First, Google fails to address *any* of the precedent cited above which finds that at the pleadings stage, allegations of vulnerabilities and a related data breach are sufficient to state a claim for negligence. Second, Plaintiffs do not expect

Google to be held limitlessly liable for any creative unforeseen data breach. Rather, in this very specific situation involving unrestricted access to localhost communication ports, industry standards and straightforward application of well-established legal standards in analogous contexts warrant holding Google liable.

Accordingly, Plaintiffs sufficiently allege a claim for negligence. Therefore, Google's motion to dismiss the tenth cause of action must be denied.

### C. Plaintiffs State a Claim for Negligent Misrepresentation

#### 1. Rule 9(b)'s Heightened Pleading Standard Does Not Apply.

"While the Ninth Circuit has not decided the issue, a growing trend of authority applies Rule 8, and not Rule 9(b), to a California law negligent misrepresentation claim." *Saari v. Hygenic Corp.*, 2019 WL 994403, at *2 (C.D. Cal. Jan. 9, 2019); *see also See Pinky's Iron Doors LLC v. Architectural Testing, Inc.*, 2025 WL 4059440, at *5 (C.D. Cal. Dec. 22, 2025); *Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 418 (C.D. Cal. 2012) ("[T]he California tort of negligent misrepresentation need not satisfy the heightened pleading standard of Rule 9(b)."). Accordingly, several recent cases in this District have not applied Rule 9(b) to negligent misrepresentation claims. *See Levit v. Nature's Bakery, LLC*, 767 F. Supp. 3d 955, 970 (N.D. Cal. 2025); *David v. George Chiala Farms, Inc.*, 2025 WL 3124339, at *11 (N.D. Cal. Nov. 7, 2025).

Plaintiffs respectfully submit that the best-reasoned line of cases explain that whether Rule 8 or Rule 9(b) applies to negligent misrepresentation claims turns on whether such claims are grounded in fraud or simple negligence. *See Najarian Holdings LLC v. Corevest Am. Fin. Lender LLC*, 2020 WL 5993225, at *6 (N.D. Cal. Oct. 9, 2020) (collecting case law and explaining that "opinions applying Rule 9(b) to negligent misrepresentation claims involved instances where the negligence claim was grounded in fraud. Conversely, where a claim is not based in fraud and involves simple negligence, then it would be in error to apply Rule 9(b)'s heightened pleading requirements") (citing *U.S. Cap. Partners, LLC v. AHMSA Int'l, Inc.*, 2013 WL 594285, at *3-4 (N.D. Cal. Feb. 14, 2013)). Here, application of Rule 9(b)'s heightened pleading standard is inappropriate because Plaintiffs' complaint sounds in negligence, not fraud. Compl. ¶¶ 244-276 (alleging only negligence and negligent misrepresentation against Google).

Because Plaintiffs' claims against Google are entirely negligence-based, Google's cited authority involving allegations based in fraud are inapposite. *See e.g.*, *Avakian v. Wells Fargo Bank, N.A.*, 827 F. App'x 765, 766 (9th Cir. 2020) (plaintiffs brought claims for intentional misrepresentation and fraud); *Puri v. Khalsa*, 674 F. App'x 679, 689 (9th Cir. 2017) (fraud claim alleged); *Kelley v. Rambus, Inc.*, 384 F. App'x 570, 573 (9th Cir. 2010) (same).

For the same reasons, this Court need not disagree with the prior instance it previously stated that Rule 9(b) applied to negligent misrepresentation claims, because in that case the claim was grounded in fraud. *See Dey v. Robinhood Markets, Inc.*, 780 F. Supp. 3d 882, 891 (N.D. Cal. 2025) (plaintiff alleged UCL fraud claim). In addition, the parties in *Dey* did not clearly present to the Court the split in authority specific to whether application of Rule 8 or Rule 9(b) to negligent misrepresentation claims depends on the nature of the theory asserted. The plaintiff's argument was limited to a footnote string cite about what pleading standard applied to a variety of different claims. *See* Pl.'s Oppo. Br., *Dey*, 2025 WL 1649159, at n.4 (N.D. Cal. Feb. 13, 2025). Defendant's reply in *Dey* actually argued for the distinction Plaintiffs urge here—that even if Rule 8 can apply in some instances, argued the defendant, it should not in that case because the allegations sounded in fraud. *See* Def.'s Reply Br., 2025 WL 1649160 (N.D. Cal. Mar. 5, 2025) ("That certain claims are not presumptively subject to the Rule 9(b) standard, see Opp. 5 n.4, is irrelevant where the gravamen of [the plaintiff]'s Complaint is fraud.").[4]

**2. Plaintiffs State a Plausible Claim Under Rule 8.**

To state a claim for negligent misrepresentation under Rule 8, Plaintiff must plausibly allege "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Najarian Holdings LLC*, 2020 WL 5993225, at *5 (citing *Apollo Capital Fund LLC v. Roth Capital Partners, LLC*, 158 Cal.

[4] This Court has also previously acknowledged arguments that Rule 9(b)'s heightened pleading standard does not apply to negligent misrepresentation claims, but declined to rule on the issue because it did not affect the outcome in that case. *See San Francisco Ladies' Prot. & Relief Soc'y v. RPM Billing, LLC*, 2025 WL 3280892, at *1 (N.D. Cal. Nov. 25, 2025) ("Because all three claims are adequately pled under Rule 9(b), this Order does not reach the issue of whether a lesser pleading standard applies to Heritage's negligent misrepresentation claim.").

App. 4th 226, 243 (2007)). Plaintiffs' allegations plainly state a claim for negligent misrepresentation.

In their Complaint, Plaintiffs supply numerous direct statements made by Google regarding Android, Chrome, the Play Store, and Pixel as private and security-focused. *See* Compl. ¶¶ 76-83. These representations were made to consumers through postings on its websites and materials for consumers on the Google Play Store. *Id*. Google represented to users that they can control data sharing and that Google employs certain safeguards—such as active monitoring, data minimization, de-identification, and access restrictions—to keep personal information private and secure. *Id*. ¶¶ 262-63. Google made these statements without any reasonable investigation into their truthfulness and without any reasonable grounds for believing they were true. *See Id*. ¶¶ 268, 264-65. Finally, Plaintiffs and Class members relied on those statements in purchasing or continuing to use Android devices and Pixel phones, browsing the internet using Google Chrome, and using apps from the Google Play Store. *See Id*. ¶¶ 270, 271-73.

Despite these allegations, Google argues that Plaintiffs have failed to allege the first, second, and fourth elements of their negligent misrepresentation cause of action. *See* Mot. at 8.

**a. Falsity**

Google incorrectly suggests that Plaintiffs fail to allege that Google's statements were false when made. *See* Mot. at 7-8. This argument simply refuses to grapple with the Complaint's allegations. Plaintiffs allege Google said (i) that Android allows users to "choose when to share certain sensitive data with apps you download"; (ii) that "Android minimizes and de-identifies your data from intelligent features" and "restricts access to technically ensure your privacy and safety"; (iii) that "Pixel is built with security at its core. Pixel hardware and software work together to help keep your phone and data private, safe, and secure"; and that (iv) "[a]ll Pixel devices are designed to respect your privacy… we ensure the privacy and safety of your data by minimizing the amount of data stored, de-identifying it so that the data is not linked to you, and restricting its access altogether." Compl. ¶ 262. Plaintiffs adequately allege that all of those statements were false when made because when they were made, Android had a design vulnerability that allowed Meta to secretly compile detailed, identified information about Android users' web browsing regardless of

the users' privacy selections due to Google's security flaw at its core that failed to restrict Meta's technical access to ensure privacy. Compl. ¶¶ 1-6, 54, 77, 84-85.

None of Google's cited cases about "fraud by hindsight" are relevant to analyzing this negligent misrepresentation claim. For example, *Mosco v. Motricity, Inc.*, 649 F. App'x 526 (9th Cir. 2016) dealt with §10(b) of the Securities Exchange Act of 1934 and whether certain vague, forward-looking statements were actionable in a securities fraud case. *In re Palo Alto Networks, Inc. Sec. Litig.*, 2025 WL 1093247, at *4 (N.D. Cal. Apr. 11, 2025) dealt with the level of accuracy required by certain disclosures in a securities action. Finally, *Hockey v. Medhekar*, 30 F. Supp. 2d 1209 (N.D. Cal. 1998) again involved a single claim for securities fraud under section 10(b)—not negligent misrepresentation.

Nor is Google's citation to *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999) helpful, as that case was decided under Rule 9(b)'s heightened standard which does not apply here. *See supra* section III.C.1. The statements the court found to be inactionable "fraud by hindsight" in *Glen Holly* were in relation to statements about future products and the efforts of defendant in developing those products—not products already in the marketplace as is the case here. *Id*. at 1098. *Nor-Cal Moving Servs. v. Paylocity Corp.*, 2025 WL 2076620, at *4 (N.D. Cal. July 23, 2025) (Mot. at 9), is similarly unavailing because the court's analysis of the negligent misrepresentation claim was not about falsity at all. Rather, the court found no plausible inference that defendant lacked a reasonable belief that its promises about its product would be fulfilled. *Id.*[5]

**b. Puffery**

Google's statements it made about the privacy and security features in its products were not puffery. *See* Mot. at 9-10. Puffery is "generalized, vague and unspecific assertions … upon which a reasonable consumer could not rely." *I-Enters. Co., LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*, 2005 WL 1661959, at *11 (N.D. Cal. July 15, 2005). Puffery includes "exaggerated

[5] *Richter v. CC-Palo Alto, Inc.*, 176 F. Supp. 3d 877, 898 (N.D. Cal. 2016), cited by Google, is also inapplicable as it was decided under Rule 9(b) and plaintiffs failed to allege the statements were false, and some statements were not positive assertions of fact but rather implied statements.

statements … that a reasonable consumer would not interpret … as a factual claim." *In re All Terrain Vehicle Litig.*, 771 F. Supp. 1057, 1061 (C.D. Cal. 1991), *aff'd in part and remanded sub nom. All Terrain Vehicle Litig., In re*, 978 F.2d 1265 (9th Cir. 1992), and *aff'd in part*, 979 F.2d 755 (9th Cir. 1992). On the other hand, "[m]isdescription[] of 'specific or absolute characteristics of a product'" are not puffery. *Id.* (quoting *Smith–Victor Corp. v. Sylvania Electric Products, Inc.*, 242 F.Supp. 302, 308–309 (N.D.Ill.1965). Nor are statements of "specific, non-subjective and testable characteristics." *Autodesk, Inc. v. Dassault Sys. Solidworks Corp.*, 685 F. Supp. 2d 1001, 1007 (N.D. Cal. 2009).

Google's statements go well beyond puffery and describe specific product features and assurances from Google that are not subjective. For example, Google specifically represents to consumers that they have a choice in sharing their own data on the Play Store. *See* Compl. ¶ 77 ("Google promises that Android allows users to 'choose when to share certain sensitive data with apps you download.'"). Google also makes certain specific assurances regarding Android as employing "[i]ndustry-leading" security features, and that it "minimizes and de-identifies your data from intelligent features . . . . to technically ensure [users'] privacy and safety." Compl. ¶ 81. And, regarding the Google Pixel mobile device, Google states: "we ensure the privacy and safety of your data by minimizing the amount of data stored, de-identifying it so that the data is not linked to you, and restricting its access altogether." Compl. ¶ 262. A reasonable consumer could (and did) rely on these statements because they are precise descriptions of a product's capabilities and features.

Google's cases, again primarily securities fraud cases inapplicable to the non-fraud theories Plaintiffs assert against Google, lend no support for its argument. In *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 708 (9th Cir. 2021), the statements used to support plaintiffs' securities fraud claims were about the general business of Google and not in relation to the features, privacy, and security of specific products. The same is true for *AMI - Gov't Emps. Provident Fund Mgmt. Co. Ltd. v. Alphabet Inc.*, 2024 WL 4353637, at *3 (N.D. Cal. Sept. 3, 2024) where the court found that statements describing generalized corporate commitments and aspirations lacked specific factual assertions and could not support fraud liability under the 1934 Exchange Act. The case *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *1 (N.D. Cal. Aug. 30, 2017), cited

by Google, actually favors Plaintiffs. In that case, although one generalized statement about protecting user privacy was determined to be puffery, a second statement that Yahoo implements "safeguards that comply with federal regulations" was found by the court to be an actionable, "specific, non-subjective guarantee." Here, Google's statements about the security and privacy of its products are much more akin to this statement from *Yahoo* than the generalized statements cherry-picked by Google in its Motion.

**c. Justifiable Reliance**

Plaintiffs plausibly allege that they relied on Google's statements. *See* Compl. ¶¶ 251, 272-74; *See e.g., id*. ¶ 273 ("In reliance on those representations, Plaintiffs and Class members purchased or continued to use Android devices and Pixel phones, browsed the Internet using Chrome, downloaded and used apps from Google Play, configured their devices and settings based on the belief that Android minimized and deidentified their data and restricted access as promised."); *see also id*. ¶¶ 251, 272, 274. By virtue of their status as Android device users, it is plausible that Plaintiffs would have seen the statements, marketing, and advertising from Google. *See id.* ¶¶ 92-93; 98-99; 104-05; 110-11.

Plaintiffs have also plausibly alleged that their reliance was justified because Google is the developer of the Android system and a major player in the technology industry. Compl. ¶ 75. Google possesses superior knowledge and special expertise such that it is reasonable for consumers (like Plaintiffs and Class members) to rely on its statements in the area of Android device privacy and security. *See Cal. Pub. Emps.' Ret. Sys. v. Moody's Investors Serv., Inc.*, 226 Cal.App.4th 643, 662 (2014) ("when a party possesses or holds itself out as possessing superior knowledge or special information or expertise regarding the subject matter and a plaintiff is so situated that it may reasonably rely on such supposed knowledge, information, or expertise, the defendant's representation may be treated as one of material fact.").

Google's cited cases are inapplicable here. *See Villarroel v. Recology Inc.*, 775 F. Supp. 3d 1050, 1062 (N.D. Cal. 2025) (not assessing negligent misrepresentation; instead, assessing fraud-based claims under Rule 9(b)); *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1048 (N.D. Cal. 2014) (same).

**d. No Reasonable Belief in Truth**

Contrary to Google's suggestion (Mot. at 11), Plaintiffs sufficiently plead that Google lacked reasonable grounds to believe its public statements about Android were true. Negligent misrepresentation does not require allegations that the defendant knew of the falsity of the statement but, rather, that the defendant made a statement while lacking a reasonable basis to believe it was true. *See Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.*, 225 F. Supp. 3d 1034, 1039 (N.D. Cal. 2016). In other words, "[a] person who makes false statements, honestly believing that they are true, may still be liable for negligent misrepresentation if he or she has no reasonable grounds for such belief." *Apollo Capital Fund, LLC*, 158 Cal. App. 4th at 243.

Google made statements to the public describing its products without taking the steps necessary to verify the veracity of those statements. Specifically, Plaintiffs allege that Google touted the superior security and privacy of Android, Chrome, the Play Store, and Pixel, but failed to adequately investigate, test, or review the actual security of Android to determine if those statements were accurate. Compl. ¶¶ 264-65, 270.

Plaintiffs also allege that Google designed and implemented Android so that apps can access localhost ports with little or no user knowledge or consent. Compl. ¶ 54. Android further permits any installed app with the "internet" permission to open a localhost port to "listen" for, or receive, data transmitted through that port. *Id.* This "overly permissive" design allowed Meta to exploit specific localhost ports (which are continuously monitored by the Facebook [and] Instagram) with web tracking identifiers. *Id.* ¶ 84. Google's decision to allow this access should have been supplemented with a security protocol to ensure such access was not misused. *Id.* ¶ 85. In these circumstances, Google knew, or should have known, that by failing to monitor access to localhost ports it had allowed a core vulnerability in Android that would enable developers like Meta to identify users and track their online activity without consent—rendering Google's assurances about privacy and security lacking reasonable grounds when made. *Id.* ¶ 87.

Plaintiffs' allegations that Google implemented countermeasures to block Meta's practices also help show that Google lacked reasonable grounds to believe its statements were true because feasible solutions were readily implemented. Compl. ¶¶ 65-66, 270. Google contends that evidence

of countermeasures it implemented cannot be used to establish liability per Fed. R. Evid. 407. Mot. at 12. But at the pleading stage, these allegations can still help establish a plausible claim. *See Nguyen v. Simpson Strong-Tie Co., Inc.*, 2020 WL 5232563, at *4 (N.D. Cal. Sept. 2, 2020) (refusing to strike allegations that *could* be used for a prohibited purpose under Rule 407 because "at this point it is too early to tell, so striking the allegations is not necessary or appropriate. Now, they're still just allegations"); *see also* Fed. R. Evid. 407 ("[T]he court may admit this evidence for another purpose, such as . . . proving . . . the feasibility of precautionary measures.").

**3. In the Alternative, Plaintiffs Allege a Claim for Negligent Misrepresentation Under Rule 9(b)'s Heightened Standards.**

Even if the heightened Rule 9(b) standards applied to this claim, Plaintiffs have met the standard. Plaintiffs allege the "who" element of Rule 9(b): Google made the representations at issue. *See* Compl. ¶¶ 66, 76-83 (identifying Google as making the statements). In addition, "where" is alleged based on allegations that Google made these statements: (i) in the Google Play Store (*Id.* ¶ 76); (ii) in its marketing materials for Pixel (*Id.* ¶ 78); (iii) in its "Safety Center" on the Google website (*Id.* ¶¶ 79-80); and (iv) on its Android website and various subpages (*Id.* ¶¶ 81-82). Google does not challenge the "who" and "where" requirements of Rule 9(b). *See* Mot. at 6-7. Google's "what," "when," and "how," arguments fare no better.

*First*, as to the "what," Google argues that the Complaint lacks specificity as to which Plaintiff saw which statement, relating to which product, and whether the statements were material and, without those, Google argues, Plaintiffs cannot plead reliance. *See* Mot. at 7. Plaintiffs, by virtue of their status as Android device users, would have seen the statements, marketing, and advertising from Google during the course of purchasing and/or using their Android devices. *See* Compl. ¶¶ 92-93; 98-99; 104-05; 110-11. And contrary to Google's assertions, Plaintiffs allege that the statements induced them to purchase and/or use Google products (*Id.* ¶ 273) and without them Plaintiffs "would not have purchased or used Google's products on the same terms, or at all." *Id.* ¶ 274.[6]

---

[6] Google cites *Ochoa v. Zeroo Gravity Games LLC,* 2023 WL 4291974 (C.D. Cal. Feb. 1, 2023), but that court analyzed a false advertising claim under the reasonable consumer test, not the sufficiency of a negligent misrepresentation claim.

*Second*, as to the "when," Google argues the statements lack a date and time they were made in relation to Meta's alleged conduct, or when Plaintiffs saw them. *See* Mot. at 7. Plaintiffs adequately allege, however, that Google made these statements during the course of its advertising and marketing of Android, Chrome, the Play Store, and Pixel. *See* Compl. ¶¶ 76-83. Plaintiffs and Class members necessarily would have seen these statements at varying times during the purchase and use of their Android devices and browsing of the Play Store. *Id.* ¶ 263. Plaintiffs also allege that at the time Google made these statements, it allowed unauthorized interception and exploitation of user's private information by third parties. *Id.* ¶ 266.

*Third*, as to the "how," Google argues that Plaintiffs do not sufficiently detail how or why each statement was false. *See* Mot. at 7. For the reasons discussed above (*see supra* section III.C.2.a), Plaintiffs detail how Google knew of the falsity of its statements, or lacked reasonable grounds for believing they were true because: (i) as a leader in the technology realm, Google knew (or should have known) of the glaring vulnerabilities of the Android system it had created; (ii) it was aware of (and, in fact designed) a product with multiple, foreseeable security vulnerabilities; (iii) it was made aware of other browser developers implementing stricter security mechanisms to block the exact conduct by Meta at issue here; and (iv) it implemented measures to counter the Meta intrusion evidencing the ability to have stopped Meta's unlawful practices earlier.[7]

## IV. CONCLUSION

For the foregoing reasons Plaintiffs respectfully request the Court deny Google's Motion to Dismiss in its entirety.

[7] Google cites *Avakian.*, 827 F. App'x at 766, but in that case, the lower court found that plaintiffs did not articulate any specific representations made by defendant, and those that were alleged were wholly conclusory. *See Avakian v. Wells Fargo Bank, N.A.*, 2019 WL 3064426, at *6 (C.D. Cal. May 10, 2019). Here, by contrast, Plaintiffs detail the exact statements of Google they contend are actionable misrepresentations.

Dated: February 20, 2026

Respectfully submitted,

By: /s/ Tina Wolfson

**AHDOOT & WOLFSON, PC**
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
Alyssa D. Brown (SBN 301313)
abrown@ahdootwolfson.com
Sarper Unal (SBN 341739)
sunal@ahdootwolfson.com
Lisa Cintron (SBN 356009)
lcintron@ahdootwolfson.com
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
pfraietta@bursor.com
50 Main St., Ste. 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (*pro hac vice*)
ykopel@bursor.com
Max S. Roberts (SBN 363482)
mroberts@bursor.com
Victoria X. Zhou (*pro hac vice*)
vzhou@bursor.com
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Michael W. Sobol (SBN 19485)
msobol@lchb.com
Michael K. Sheen (SBN 288284)
msheen@lchb.com
Amelia A. Haselkorn (SBN 339633)
ahaselkorn@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

**MILBERG, PLLC**
Gary M. Klinger (*pro hac vice*)
William J. Edelman (SBN 285177)
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
gklinger@milberg.com
wedelman@milberg.com

**MILBERG, PLLC**
Mariya Weekes (*pro hac vice*)
333 SE 2nd Avenue, Suite 2000
Miami, FL, 33131
Tel: (786) 879-8200
Fax: (786) 879-7520

*Interim Class Counsel*

**ATTESTATION OF FILER—LOCAL RULE 5-1(i)(3)**

I, Tina Wolfson, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*/s/ Tina Wolfson*
Tina Wolfson