LATHAM & WATKINS LLP
Serrin Turner (*pro hac vice*)
*serrin.turner@lw.com*
Nicolas Luongo (*pro hac vice*)
*nicolas.luongo@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Brad Baglien (*pro hac vice*)
*brad.baglien@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

In re Meta Android Privacy Litigation.

This Document Relates To:
All Actions

Case No. 3:25-cv-04674-RFL

**DEFENDANT META PLATFORMS, INC.'S REPLY TO REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**

Hearing: March 24, 2026
Time: 10:00 a.m.
Location: Courtroom 15—18th Floor
Judge: Hon. Rita F. Lin

## I. INTRODUCTION

Plaintiffs try to support their claims with snippets of documents, while shielding other portions that undermine their claims. That is exactly what the incorporation-by-reference doctrine is meant to avoid. Plaintiffs offer no valid reason why this Court should ignore the full content of the documents in deciding Meta's motion to dismiss. They are referenced in the Complaint, form the basis for Plaintiffs' claims, and are judicially noticeable in any event. The Court should consider the documents in full.

## II. ARGUMENT

### A. Exhibits A-H Are Incorporated By Reference Into The Complaint

#### 1. Meta's Privacy Policy and Cookies Policy

Plaintiffs argue that the Court should not consider Meta's Privacy Policy and Cookies Policy because they are only cited in the Complaint via "short quotations" and not "extensively." RJN Opp. 2. But that is precisely why incorporation by reference is appropriate: Plaintiffs cannot rely on "short quotations" of documents that they believe support their allegations, while precluding the Court from considering the remaining "portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *see also In re Facebook Secs. Litig.*, 405 F. Supp. 3d 809, 829 (N.D. Cal. 2019) (considering Facebook's Data Policy because it "would be unfair for Plaintiffs to reference th[e] document" in their complaint while "suppress[ing] the actual policy"), *rev'd on other grounds*, 87 F.4th 934 (9th Cir. 2023); *Love v. Ladder Fin., Inc.*, 2024 WL 2104497, *2 n.2 (N.D. Cal. May 8, 2024) (noting that the Court should look "to the language" of the Privacy Policy "itself … rather than the selective quotes" included by Plaintiffs). Plaintiffs cite to portions of the Privacy Policy and Cookies Policy to claim that Meta did not disclose the alleged conduct. Having done so, they cannot simultaneously shield the full scope of Meta's disclosures in those same documents from the Court's consideration.

Plaintiffs are also wrong to assert that the Privacy Policy and Cookies Policy "do not form the basis of Plaintiffs' claims, much less any assertion regarding consent," RJN Opp. 3. As Meta explained, because lack of consent is an element of Plaintiffs' claims and depends on the

sufficiency of the disclosures, the "disclosures form the basis of the claims themselves" and the Court should deem those disclosures incorporated by reference. *Gershfeld v. TeamViewer US, Inc.*, 2023 WL 334015, at *1 (9th Cir. Jan. 20, 2023); *see also* RJN 3-4.

Plaintiffs ignore this authority, arguing they plead a lack of consent based solely on expectations drawn from "sandboxing principles" and "the manner or breadth of Meta's data collection," independent of the Privacy Policy and Cookie Policy. RJN Opp. 3. This argument is meritless. Plaintiffs' allegations of lack of consent necessarily turn on the alleged insufficiency of Meta's disclosures—that "Meta did not disclose the misconduct alleged herein, including in any public-facing policies," Compl. ¶ 71, that the alleged conduct "stands in stark contrast to Meta's public statements about how their users can purportedly 'control [their] privacy,'" *id.* ¶ 72 (citing Privacy Policy), and that "[n]either Meta's nor any website's privacy policy provided clear, explicit, or adequate notice" of the conduct alleged, *id.* ¶ 189. Plaintiffs cannot simultaneously allege that Meta's policies failed to adequately disclose the alleged conduct while also insisting that the Court not examine those policies. *See* RJN 3-4.

**2. Webpages Cross-Referenced in Privacy Policy**

Plaintiffs next argue that the Meta Help Center page (Exhibit F) and user control interface (Exhibit G) are not incorporated because the Complaint does not reference them directly. But documents may be incorporated even where a plaintiff "does not explicitly allege the contents of th[e] document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *see also Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (incorporating health plan document that was "not explicitly incorporated" in the complaint, where claims depended on coverage under the plan); *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1121-22 (S.D. Cal. 2021) (incorporating additional printouts from defendant's website where complaint "refer[red] extensively to Defendant's online advertising" and included pictures from defendant's online store). Here, these pages comprise part of the disclosures Plaintiffs put at issue, because they are cross-referenced in the very portion of the Privacy Policy that Plaintiffs cite, and thus form the basis of Plaintiffs' claims that Meta failed to sufficiently disclose the alleged conduct.

**a. Help Center Page (Exhibit F)**

As to Meta's Help Center page (Exhibit F), Plaintiffs argue that the document is not "effectively incorporated by reference" into Meta's Privacy Policy because a user must "scroll half way down the Privacy Policy" and then click two hyperlinks to access it. RJN Opp. 4. But a document can be incorporated by reference even if there are additional steps to view them. *See Hammerling v. Google LLC*, 2022 WL 17365255, at *3 (N.D. Cal. Dec. 1, 2022) (additional disclosure that "pop[ped] up" within a privacy disclosure incorporated by reference); *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 791 (N.D. Cal. 2019) (policy linked in terms was "incorporate[d] . . . into the contractual agreement"). What matters is that the Privacy Policy clearly "guide[s] the reader to the incorporated" Help Center page, which Plaintiffs do not meaningfully dispute. *See* RJN 5 (quoting *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997) (citation omitted)). Moreover, the referenced Help Center article forms the basis of Plaintiffs' claims for the same reason as the policies more generally: because Plaintiffs are suing Meta based on the alleged insufficiency of these disclosures. *See Gershfeld*, 2023 WL 334015, at *1; *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 941 n.2 (N.D. Cal. 2024) (Lin, J.). Again, Plaintiffs cannot allege that Meta's policies failed to disclose the alleged conduct, while preventing the court from reviewing the information provided—or linked to—in those disclosures.

**b. User Control Interface (Exhibit G)**

Similarly, the same section of the Privacy Policy Plaintiffs quote from in the Complaint refers and links to the user control interface (Exhibit G), which discloses that Meta connects third-party activity to user accounts and explains how users can "[d]isconnect" such activity. Plaintiffs claim that Meta violated Plaintiffs' privacy rights by "eliminat[ing] the possibility of user control," in "stark contrast to [its] public statements about how users can purportedly 'control [their] privacy.'" Compl ¶ 72; *see also* MTD Opp. 6 (arguing that "Meta deprived [Plaintiffs] of their control of their personal information"). Again, Meta's disclosure of these controls bears directly on Plaintiffs' allegations that users were not adequately informed of Meta's identity-matching and the ways in which users could control it. Plaintiffs cannot have it both ways. To the extent they challenge the adequacy of Meta's disclosures, including statements about controls, the Court is

entitled to consider the full scope of those disclosures, including to the extent they bear on controls. *See Khoja*, 899 F.3d at 1002; RJN 5-6.

**3. Meta Business Help Center Article**

Plaintiffs similarly argue that the Meta Business Help Center Article (Exhibit H) is not incorporated by reference because it is only cited "once" and is not "integral to Plaintiffs' claims." RJN Opp. 4. Both arguments are meritless. Incorporation by references does not depend on the number of times a complaint cites a document. And the document is "integral" to Plaintiffs' claims. Plaintiffs themselves say they cite the article to establish a baseline of "what would happen 'under normal circumstances' if Meta had not unlawfully matched users' browsing activity with their Facebook or Instagram IDs." RJN Opp. 4; *see also* Compl. ¶ 32. And in their Opposition to the Motion to Dismiss, they argue that the document indicates that "the Meta Pixel is normally *incapable* of identifying a person…on a mobile device." MTD Opp. 10. Thus, the document forms part of the basis of Plaintiffs claims that they reasonably believed that their third-party activity on their mobile devices could not be matched to their accounts—the crux of their argument that they did not consent to the alleged conduct.

In fact, the document does not at all reflect that Meta represented to users that it was incapable of identifying mobile device users; the document indicates the opposite—that Meta has a variety of means of identifying users. Given that Plaintiffs have put the document in play, the Court is entitled to review it to determine whether Plaintiffs are characterizing it accurately—and whether it actually supports their consent allegations. *See Khoja*, 899 F.3d at 1003; *see also Browning v. Am. Honda Motor Co.*, 549 F. Supp. 3d 996, 1004 (N.D. Cal. 2021) (explaining that Courts "routinely consider the 'full page [of a] website'" where, "'[a] portion of the page' is quoted or relied on in the complaint" (citing *Emeco Indus., Inc. v. Restoration Hardware, Inc.*, 2012 WL 6087329, at *1 n.2 (N.D. Cal. Dec. 6, 2012)); *Good Meat Project v. GOOD Meat, Inc.*, 716 F. Supp. 3d 783, 806-07 (N.D. Cal. 2024) (Lin, J) (refusing to allow Plaintiffs to cite "only selected portions of [a] website" because it would "trigger the dangers that the [incorporation by reference] doctrine seeks to prevent"); *F.T.C. v. Benning*, 2010 WL 2605178, at *5 (N.D. Cal. June 28, 2010) ("[T]he Court can consider the complete text and content of a document selectively cited to and

relied upon in a complaint." (citation omitted)).

**B. Exhibits A-H Are Also Subject To Judicial Notice**

The exhibits are also subject to judicial notice under Federal Rule of Evidence 201. Plaintiffs argue that Meta's exhibits are "legally insufficient" for judicial notice because they are "written, published, and maintained by Meta itself" and therefore their "accuracy can be reasonably questioned." RJN Opp. 5. But this argument misconstrues the purpose for which Meta seeks judicial notice. Meta is not asking the Court to accept the "alleged truth of the matters asserted" in the exhibits, *id.* at 6, but only to take notice of the existence and content of the disclosures made to users. *See* RJN 8. Courts routinely take judicial notice of privacy policies and related webpages for this purpose, as Plaintiffs themselves highlight. *See* RJN Opp. 6; *see also* RJN 8 (collecting cases); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 814 (N.D. Cal. 2020) ("the existence of [Google warranty] documents is a judicially noticeable fact"); *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1190-91 (S.D. Cal. 2024) (finding that "[t]he existence of the privacy policies and webpages are judicially noticeable facts").

The Court need only consider what the policies say on their face, including what Meta disclosed about its collection and use of information from third-party websites, to determine how those disclosures bear on the plausibility of Plaintiffs' claims. For example, the content of Meta's Privacy Policy and Cookies Policy is relevant to whether a reasonable person reading the disclosures at issue would expect that their browsing activity on third-party websites could be linked to their Meta accounts—the very practice Plaintiffs allege was "surreptitious" and undisclosed. *See* Compl. ¶¶ 71, 130. Likewise, the Court need only consider what Meta's Help Center page (Exhibit F) and user control interface (Exhibit G) say on their face to determine whether Plaintiffs' have plausibly pled a reasonable expectation that Meta could not track their browsing activity. *See* Compl. ¶¶ 95, 101, 107, 113. The Court can therefore take judicial notice as to the "fact that these documents exist" and the existence of the contents therein. *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 976 (N.D. Cal. 2015); *see also Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (taking judicial notice "of publications introduced to indicate what was in the public realm at the time, not whether the contents of those

articles were in fact true" (quotation omitted)).

Finally, Plaintiffs' argument that "whether those versions of Meta's policies and disclosures would inform a reasonable consumer of Meta's conduct" is a "factual question" (RJN Opp. 6) mischaracterizes the inquiry. At the pleading stage, the Court routinely evaluates, as a matter of law, whether disclosures are adequate to inform a reasonable consumer. *See, e.g., Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1056-57 (N.D. Cal. 2025) (evaluating disclosures in judicially noticed privacy policy to assess whether plaintiff's claims were plausible); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1062-67 (N.D. Cal. 2021) (evaluating Google's judicially noticed disclosures to assess whether users had notice of the practices at issue). Courts do not treat the adequacy of disclosures as a "disputed fact" precluding judicial notice—they examine the disclosures to determine whether plaintiffs' claims are facially plausible, as this Court should.

## III. CONCLUSION

For the foregoing reasons, Meta respectfully requests that the Court grant its request for judicial notice.

Dated: March 6, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By */s/ Serrin Turner*

Serrin Turner (*pro hac vice*)
*serrin.turner@lw.com*
Nicolas Luongo (*pro hac vice*)
*nicolas.luongo@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Brad Baglien (*pro hac vice*)
*brad.baglien@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111

Telephone: +1.415.391.0600