**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Valerie Roddy (CA Bar No. 235163)
valerieroddy@quinnemanuel.com
Teuta Fani (CA Bar No. 360443)
teutafani@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel:  (213) 443-3000
Fax:  (213) 443-3100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel:  (312) 705-7400
Fax:  (312) 705-7401

Taylor Ross (admitted *pro hac vice*)
taylorross@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, New York 10016
Tel:  (212) 849-7000
Fax:  (212) 849-7100

*Attorneys for Defendant Google LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| *In re Meta Android Privacy Litigation*<br><br>This document Relates to:<br>All Actions | Case No. 3:25-cv-04674-RFL<br><br>**GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>The Honorable Rita F. Lin<br><br>Courtroom:  Courtroom 15, 18th Floor<br>Date: March 24, 2026<br>Time: 10:00 a.m.<br><br>Complaint Filed:  November 26, 2025<br>Trial Date:  None Set |

**TABLE OF CONTENTS**

Page

INTRODUCTION...................................................................................................................1

ARGUMENT .........................................................................................................................2

I.      THE NEGLIGENT MISREPRESENTATION CLAIM FAILS ........................................2

        A.      Rule 9(b) Applies to Plaintiffs' Negligent Misrepresentation Claim, and
                They Fail to Satisfy It...............................................................................2

        B.      Plaintiffs Fail to Plead The Essential Elements Under Rule 8 ................................3

                1.      Plaintiffs Have Not Adequately Alleged Falsity.........................................3

                2.      The Challenged Statements Are Non-Actionable Puffery ...........................4

                3.      Plaintiffs Fail to Allege Actual Reliance...................................................5

                4.      Plaintiffs Fail to Allege Google Lacked Reasonable Grounds for Its
                        Statements .............................................................................................6

II.     PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENCE ....................................8

        A.      Plaintiffs Fail to Establish a General Duty.................................................................8

        B.      Plaintiffs Fail to Establish the "Special Relationship" Exception Applies ...............8

                1.      Plaintiffs Fail to Allege a Special Relationship .........................................9

                2.      The *Rowland* Factors Also Forbid Imposing a Duty Here..........................11

        C.      Plaintiffs Fail to Allege Breach of a Duty.................................................................12

        D.      Meta's Conduct is a Superseding Cause ...................................................................14

CONCLUSION .......................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>Cases</u>

*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024) .................................................................................. 8, 11

*Al Shikha v. Lyft, Inc.*,
102 Cal. App. 5th 14 (2024) ...................................................................................................... 14

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) ........................................................................................................ 5

*AMI - Gov't Emps. Provident Fund Mgmt. Co. Ltd. v. Alphabet Inc.*,
2024 WL 4353637 (N.D. Cal. Sept. 3, 2024) ............................................................................ 5

*Backhaut v. Apple, Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014) ...................................................................................... 6

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ............................................................................. 8, 11

*Bhago Transp. Inc. v. United Nat'l Ins. Co.*,
2025 WL 2369225 (C.D. Cal. July 31, 2025) ............................................................................ 2

*Bily v. Arthur Young & Co.*,
3 Cal. 4th 370 (1992) .................................................................................................................. 2

*Bogard v. TikTok Inc.*,
2025 WL 3637035 (N.D. Cal. Dec. 15, 2025) ......................................................................... 10

*Brown v. USA Taekwondo*,
11 Cal. 5th 204 (2021) .............................................................................................................. 11

*Castillo v. GEICO Ins. Agency, LLC*,
2025 WL 445799 (N.D. Cal. Feb. 10, 2025) ............................................................................. 2

*Chanda v. Fed. Home Loans Corp.*,
215 Cal. App. 4th 746 (2013) ................................................................................................... 14

*Dey v. Robinhood Markets, Inc.*,
780 F. Supp. 3d 882 (N.D. Cal. 2025) ...................................................................................... 6

*Dyroff v. Ultimate Software Grp., Inc.*,
2017 WL 5665670 (N.D. Cal. Nov. 26, 2017) ......................................................................... 12

*Flores-Mendez v. Zoosk, Inc.*,
2021 WL 308543 (N.D. Cal. Jan. 30, 2021) ........................................................................... 13

*Gilmore v. Wells Fargo Bank N.A.*,
 75 F. Supp. 3d 1255 (N.D. Cal. 2014) ................................................................................. 2

*Girard v. Delta Towers Joint Venture*,
 20 Cal. App. 4th 1741 (1993) ................................................................................... 8, 9, 10

*Glen Holly Ent., Inc. v. Tektronix, Inc.*,
 100 F. Supp. 2d 1086 ............................................................................................................ 4

*Golden Eagle Land Inv., L.P. v. Rancho Santa Fe Assn.*,
 19 Cal. App. 5th 399 (2018) ................................................................................................. 2

*Impac Warehouse Lending Group v. Credit Suisse First Boston LLC*,
 270 F. App'x 570 (9th Cir. 2008) ........................................................................................ 8

*Jane Doe No. 1 v. Uber Techs., Inc.*,
 79 Cal. App. 5th 410 (2022) ........................................................................................... 8, 11

*Kuciemba v. Victory Woodworks, Inc.*,
 14 Cal. 5th 993 (2023) ....................................................................................................... 12

*Levit v. Nature's Bakery, LLC*,
 767 F. Supp. 3d 955 (N.D. Cal. 2025) .............................................................................. 2, 3

*In re Meta Pixel Tax Filing Cases*,
 724 F. Supp. 3d 987 (N.D. Cal. 2024) ............................................................................... 10

*Najarian Holdings LLC v. Corevest Am. Fin. Lender LLC*,
 2020 WL 5993225 (N.D. Cal. Oct. 9, 2020) ....................................................................... 2

*Nguyen v. Simpson Strong-Tie Co.*,
 2020 WL 5232563 (N.D. Cal. Sept. 2, 2020) ..................................................................... 8

*Nor-Cal Moving Servs. v. Paylocity Corp.*,
 2025 WL 2076620 (N.D. Cal. July 23, 2025) .................................................................... 7

*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*,
 157 Cal. App. 4th 835 (2007) ............................................................................................... 6

*Pacini v. Wells Fargo Bank, N.A.*,
 2012 WL 12897961 (N.D. Cal. Dec. 26, 2012) .................................................................. 6

*Patel v. Citibank Corp.*,
 2019 WL 7987113 (C.D. Cal. Sept. 27, 2019) ................................................................... 8

*Pinky's Iron Doors LLC v. Architectural Testing, Inc.*,
 2025 WL 4059440 (C.D. Cal. Dec. 22, 2025) .................................................................... 2

*Regents of University of California v. Superior Court*,
 4 Cal. 5th 607 (2018) ................................................................................................. 9, 10, 11

GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED
CLASS ACTION COMPLAINT

*Rowland v. Christian*,
70 Cal.Rptr. 97 (1968) ............................................................................................. 9, 10, 11

*In re SanDisk SSDs Litigation*.
736 F. Supp. 3d 786 (N.D. Cal. 2024) ............................................................................. 2

*Schmitt v. SN Servicing Corp.*,
2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) ................................................................ 13

*Stasi v. Inmediata Health Group Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) ............................................................................. 8

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .................................................................................. 11, 13

*Villarroel v. Recology Inc.*,
775 F. Supp. 3d 1050 (N.D. Cal. 2025) .......................................................................... 6

*Williams v. Fremont Corners, Inc.*,
37 Cal. App. 5th 654 (2019) .................................................................................. 11, 12

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ............................................................... 5

*Ziencik v. Snap, Inc.*,
2024 WL 6846238 (C.D. Cal. Jan. 19, 2024) ............................................................ 9, 10

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
525 F. Supp. 3d 1017 (N.D. Cal. 2021) .......................................................................... 9

**<u>Other Authorities</u>**

Fed. R. Civ. P. 8 ....................................................................................................... 1, 2, 3

Fed. R. Civ. P. 9(b) ............................................................................................ 1, 2, 3, 4, 6

Fed. R. Evid. 407 .......................................................................................................... 7, 8

GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED
CLASS ACTION COMPLAINT

**INTRODUCTION**

Unsurprisingly, Plaintiffs' Opposition fails to resuscitate their claims. Plaintiffs' negligent misrepresentation and negligence claims against Google are flawed because they seek to hold Google liable for another commercial actor's alleged wrongdoing Plaintiffs assert was covert, novel, and designed to evade detection—in other words, unknowable and unforeseeable.

First, a negligent misrepresentation claim must satisfy Rule 9(b), and Plaintiffs cannot meet that standard because they do not plead with particularity what purported Google misstatement each Plaintiff actually saw, when they saw it, or how any challenged statement was false when made. Even under Rule 8, dismissal is warranted: Plaintiffs do not plausibly allege falsity, challenge statements that are mere puffery, fail to allege any named Plaintiff actually read and relied on the challenged statements, and do not plausibly allege Google lacked reasonable grounds to believe its statements were true. Indeed, Plaintiffs rely in part on statements concerning Google Pixel, a product they do not allege they used and have since acknowledged they did not use, which underscores the implausibility of their misrepresentation claim.

Plaintiffs' negligence claim fails on duty, breach, and causation. Most fundamentally, the alleged wrongdoer is Meta, not Google. Plaintiffs allege that Meta—through its own installed apps—misused legitimate access to Android localhost ports in violation of Google's policies, which constitutes a superseding cause. Unable to defend their claim as alleged, Plaintiffs attempt to recast Meta's alleged tracking as a "data breach" to invoke inapplicable legal duties and pleading shortcuts. This is not a breach case. Plaintiffs do not allege a hacker infiltrated Google's systems. Instead, they allege that Meta—whose apps were installed on Plaintiffs' devices—exceeded its authorized access in violation of Google's policies. The duty recognized in data-breach cases arises when a defendant fails to safeguard data in its possession from criminal intrusion—an obligation Plaintiffs do not and cannot allege here.

Finally, Plaintiffs fail to address Google's argument that these defects cannot be cured, *see* Mot. § III, conceding that dismissal should be with prejudice if the Court finds their claims inadequately pleaded.

GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT

## ARGUMENT

## I.    THE NEGLIGENT MISREPRESENTATION CLAIM FAILS

### A.    Rule 9(b) Applies to Plaintiffs' Negligent Misrepresentation Claim, and They Fail to Satisfy It

The Ninth Circuit and a majority of courts in this district, including this Court, have repeatedly applied Rule 9(b) to negligent misrepresentation claims. *See* Mot. 6–7; *In re SanDisk SSDs Litigation*. 736 F. Supp. 3d 786, 795 (N.D. Cal. 2024) (Lin, J.) (applying Rule 9(b) to negligent misrepresentation); *Bhago Transp. Inc. v. United Nat'l Ins. Co.*, 2025 WL 2369225, at *4 n.6 (C.D. Cal. July 31, 2025) ("majority of district courts in California consider … negligent misrepresentation a species of fraud and apply Rule 9(b)"); *Castillo v. GEICO Ins. Agency, LLC*, 2025 WL 445799 (N.D. Cal. Feb. 10, 2025) (even where no fraud allegations, court applied Rule 9(b) to negligent misrepresentation).

Plaintiffs argue that courts purportedly apply different pleading standards depending on the "type" of negligent misrepresentation alleged—Rule 8 where the claim is framed as negligence and Rule 9(b) where it is framed as fraud. That distinction is not supported by binding authority or logic.[1] Binding California law  classifies "[n]egligent misrepresentation [as] a species of the tort of deceit." *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 407 (1992) (holding that negligent misrepresentation is a tort separate and distinct from negligence and sounds in fraud); *Golden Eagle Land Inv., L.P. v. Rancho Santa Fe Assn.*, 19 Cal. App. 5th 399, 426 (2018) (negligent misrepresentation is a "fraud-based theor[y]"); *see also Gilmore v. Wells Fargo Bank N.A.*, 75 F. Supp. 3d 1255, 1269 (N.D. Cal. 2014) ("negligent misrepresentation is a species of fraud"). And even if unpublished district court cases could overrule California law on this point (they cannot), the opinions Plaintiffs cite (Opp. 12) do support their claim that there is a "growing trend" applying Rule 8 rather than Rule 9(b) to negligent misrepresentation.[2]

---

[1] The case Plaintiffs cite in support of this purported distinction, *Najarian Holdings LLC v. Corevest Am. Fin. Lender LLC*, 2020 WL 5993225, at *6 (N.D. Cal. Oct. 9, 2020), ultimately applied Rule 9(b)'s standard to the negligent misrepresentation claim.

[2] Of the six cases Plaintiffs cite, four allowed the claim to survive while explicitly confirming Rule 9(b) was satisfied in any event. *Pinky's Iron Doors LLC v. Architectural Testing, Inc.*, 2025 WL 4059440, at *5 (C.D. Cal. Dec. 22, 2025) applied Rule 8 and still dismissed the claim. *Levit v.*

Plaintiffs' allegations do not meet the heightened pleading standard of Rule 9(b). As a threshold issue, ***none*** of the named Plaintiffs individually allege they used or owned a Google Pixel device, Mot. 5,[3] so the purported misrepresentations Plaintiffs identify that relate to Google Pixel cannot form the basis for liability.

Even turning a blind eye to this deficiency, Plaintiffs' allegations still fail to satisfy the "what," "when," or "how" of Rule 9(b). They ask the Court to infer that they "would have seen" Google's statements during device purchase or use, Opp. 19, which confirms the absence of particularized allegations. No Plaintiff alleges that they actually read any of the challenged statements, much less which statements they read or whether those statements related to the product they used. No Plaintiffs alleges when they encountered the statements, asserting only that they appeared "during the course of" Google's advertising and that Plaintiffs "necessarily would have seen" them "at varying times." Opp. 20. Finally, Plaintiffs do not explain how any specific statement was false when made, instead repeating their conclusory allegations—deficiencies that fail even Rule 8, let alone Rule 9(b). Mot. 6–7.

**B.      Plaintiffs Fail to Plead The Essential Elements Under Rule 8**

**1.      Plaintiffs Have Not Adequately Alleged Falsity**

Plaintiffs argue that the challenged statements were false because Android's localhost architecture constituted a pre-existing "design vulnerability" that allowed Meta to exploit users' data. Opp. 14–15. This argument fails logic and law.

Plaintiffs do not allege facts showing that any challenged statement was untrue at the time it was made. They do not contend, for example, that Google failed to work on weeding out harmful apps, failed to employ any safety processes, or failed to implement any data minimization and de-identification practices. Nor can they. If Android's security was flawed from the start, Meta would

---

*Nature's Bakery, LLC*, 767 F. Supp. 3d 955 (N.D. Cal. 2025) applied Rule 8 without analysis, simply citing its own prior decision in *Ronpak*, where Rule 9(b) was satisfied regardless. *Id.* at 970.

[3]  Before Google filed its Motion, Plaintiffs' counsel confirmed in writing that none of Plaintiffs' Android mobile devices at issue in this litigation, including those referenced in the Complaint (*see, e.g.*, Dkt. 84 ¶¶ 92, 98, 104, 110) are Google Pixel devices. Although outside the pleadings, this representation confirms the deficiency cannot be cured by amendment.

GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED
CLASS ACTION COMPLAINT

have had no need for the allegedly sophisticated localhost exploit—it could have tracked users directly. The very fact that they allege Meta had to circumvent Android's protections and violate Google's policies, Compl. ¶¶ 65-70, proves those protections existed when Google's statements were made. Claiming that Android's later-discovered susceptibility to a novel, concealed exploitation technique renders Google's earlier security representations false is exactly the type of fraud by hindsight that cannot clear the pleadings hurdle. Mot. 8.

Plaintiffs attempt to confine the fraud by hindsight cases to the securities context. But the fraud by hindsight principle is not a creature of securities law—it is a logical corollary of what it means to plead falsity in any context. A plaintiff must allege facts showing a statement was inaccurate when made, not use a later outcome to work backwards and declare earlier statements false. *See Glen Holly Ent., Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1098–99 (applying principle to non-securities negligent misrepresentation claim). Plaintiffs try to distinguish *Glen Holly* because it involved forward-looking product promises rather than descriptions of existing features and was decided under Rule 9(b). But the fraud by hindsight doctrine does not turn on whether the statements are labeled forward-looking or present-tense, nor does it derive from Rule 9(b)'s heightened pleading standard. It turns on whether the plaintiff has "plead[ed] inconsistent contemporaneous statements," as opposed to using a later outcome to infer earlier falsity. *Id.*

### 2.    The Challenged Statements Are Non-Actionable Puffery

Plaintiffs' Opposition fails to specifically address, and therefore effectively concedes, that the following statements are non-actionable puffery: "Pixel is built with security at its core," "hardware and software work together to help keep your phone and data private, safe, and secure," Google "continually work[s] on ways to weed out harmful apps" and uses "extensive review processes." *See* Opp. 16–17. These statements communicate a general design philosophy courts hold to be non-actionable puffery. *See* Mot. 9–10.

The statements that Plaintiffs' Opposition continues to challenge are likewise not actionable because none of them represents an objectively measurable outcome or verifiable benchmark. For example, the term "[i]ndustry-leading" is a quintessential example of non-actionable puffery, a

GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED
CLASS ACTION COMPLAINT

comparative superlative with no defined metric against which it could be measured or falsified.[4] "Minimizes" is a relative term with no defined threshold.[5] The statement that Android allows users to "choose when to share certain sensitive data" is vague — it does not specify what data, which apps, or what the scope of that choice encompasses.[6] Indeed, unlike the promise in *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at \*2 (N.D. Cal. Aug. 30, 2017) that "safeguards [would] comply with federal regulations," none of these statements are designed to be tested against an external standard or regulation.

*In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 708 (9th Cir. 2021) and *AMI - Gov't Emps. Provident Fund Mgmt. Co. Ltd. v. Alphabet Inc.*, 2024 WL 4353637, at \*3 (N.D. Cal. Sept. 3, 2024) firmly stand for the principle that broad, high-level statements about privacy and security practices are non-actionable puffery because they amount to vague, generalized corporate aspirations incapable of supporting liability. Plaintiffs argue that these two opinions are distinguishable because they involve securities fraud and corporate commitments rather than product-specific security representations. Opp. 16. These distinctions are inapposite. Plaintiffs do not dispute that the puffery doctrine is a general principle of California law that applies to negligent misrepresentation claims. Mot. 9. And Google's alleged misstatements are akin to the inactionable statements at issue in *In re Alphabet, Inc. Securities Litigation* and *AMI - Government Employees Provident Fund Management Co.*, i.e. statements that the company has a "very robust and strong privacy program" or that "[p]rivacy is at the heart of everything we do."

### 3. Plaintiffs Fail to Allege Actual Reliance

Plaintiffs concede that actual reliance is required to state a negligent misrepresentation claim under California law, *see* Mot. 10–11; Opp. 17, and that their Complaint contains no allegation that any Plaintiff actually read any of the challenged statements, *see* Opp. 17. That is fatal to their claim:

---

[4] Plaintiffs allege Google misstated that it employs "[i]ndustry-leading" Android security features. Compl. ¶81.

[5] Plaintiffs allege Google misstated that it "minimizes and de-identifies your data from intelligent features . . . . to technically ensure [users'] privacy and safety." Compl. ¶ 81.

[6] Plaintiffs allege Google misstated that Android allows users to "choose when to share certain sensitive data with apps you download." Compl. ¶ 262.

GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT

a plaintiff cannot have relied on a statement they have not read. *See* Mot. 10–11.[7]

To escape dismissal, Plaintiffs claim that their conclusory allegation that they acted "in reliance on [Google's] representations" is sufficient because they "would have seen" the statements as Android users. That is not the law. *See* Mot. 10–11 (citing cases). And regardless, Plaintiffs' own allegations undermine the inference they demand the Court to draw. The three sets of challenged statements appear on specific product webpages—the Google Play Safety Center, the Android product pages, and the Pixel product page. No named Plaintiff alleges they visited any of those pages. Nor does any Plaintiff allege they owned a Pixel device, yet one of the three sets of challenged statements relate specifically to that product. Compl. ¶¶ 92–115. Indeed, there is no plausible basis to infer that ***any*** Plaintiff was even exposed to—much less relied upon—the statements they now challenge.

Plaintiffs' claim that their reliance was justified because Google is the developer of the Android system and a major player in the technology industry is neither here nor there. Even if properly alleged, justifiability does not eliminate the distinct threshold requirement of actual reliance. *See Dey*, 780 F. Supp. 3d at 891 ("To establish the reliance element of the claim, a plaintiff must show '(1) that they actually relied on the defendant's misrepresentations, and (2) that they were reasonable in doing so.'" (quoting *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 863 (2007))). No amount of Google's superior knowledge about Android renders it plausible that a Plaintiff relied on statements they never read.

### 4. Plaintiffs Fail to Allege Google Lacked Reasonable Grounds for Its Statements

Plaintiffs claim that Google failed to verify its statements regarding the security and privacy of Android, Chrome, the Play Store, and Pixel. Opp. 18 (citing Compl. ¶¶ 264–65, 270). But they

---

[7] Plaintiffs' only quarrel with *Villarroel v. Recology Inc.*, 775 F. Supp. 3d 1050 (N.D. Cal. 2025) and *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033 (N.D. Cal. 2014) is that they assessed fraud claims rather than negligent misrepresentation. Opp. 17. That is a distinction without a difference. The actual reliance requirement is a substantive element of both fraud and negligent misrepresentation under California law. *See Pacini v. Wells Fargo Bank, N.A.*, 2012 WL 12897961, at *5 (N.D. Cal. Dec. 26, 2012). That is clear in this Court's decision in *Dey v. Robinhood Markets, Inc.*, 780 F. Supp. 3d 882 (N.D. Cal. 2025), which Plaintiffs fail to address or distinguish, where the Court dismissed the negligent misrepresentation claim because the plaintiff had failed to allege he read the statements even though he satisfied Rule 9(b) requirements. *Id.* at 891.

GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT

fail to allege any facts showing Google had reason to doubt its own statements or what Google did or did not do to verify those statements. The only allegation Plaintiffs point to is that Android had an allegedly "overly permissive" localhost design Google should have known to monitor. But as explained above, the localhost architecture is a standard feature of mobile operating systems that exists on iOS as well. *See* Compl. ¶ 86. The fact that Google designed Android to permit localhost access does not mean Google had reason to believe that access would be exploited by other actors in the ecosystem. Plaintiffs' own complaint acknowledges that Meta's scheme was novel, concealed, and not identified by anyone—including sophisticated web developers—for nearly a year. *See* Mot. 2; Compl. ¶ 73. If the risk was not apparent to those with direct visibility into network traffic, there is no plausible basis to allege that Google should have known Android was subject to this risk or that its security statements were purportedly inaccurate on this basis. *See Nor-Cal Moving Servs. v. Paylocity Corp.*, 2025 WL 2076620, at *3–4 (N.D. Cal. July 23, 2025) (Lin, J.) (reasonable grounds element not met where plaintiff offered no contemporaneous facts showing defendant had reason to doubt its own statements).

Plaintiffs argue that Rule 407 does not bar allegations of Google's implementation of countermeasures after Meta's conduct was exposed because these purportedly show feasible solutions were available to Google. Plaintiffs' invocation of the feasibility exception to Rule 407 is unavailing at the motion to dismiss stage where feasibility is not at issue. At issue is whether Plaintiffs can rely on implementation of countermeasures to prove Google's purported culpability. Rule 407 forbids it. The Opposition does not address the cases Google cited establishing that subsequent remedial measure allegations cannot be used to state a claim, *see* Mot. 12, or provide a reason why the Court should not follow the reasoning in those cases. The Court should decline Plaintiffs' invitation to use inadmissible evidence to save an otherwise deficient claim.[8]

---

[8] Plaintiffs' reliance on *Nguyen v. Simpson Strong-Tie Co.*, 2020 WL 5232563 (N.D. Cal. Sept. 2, 2020), is misplaced. There, the court there merely declined to strike allegations under Rule 407; it did not hold that subsequent remedial measures can support a claim.

## II.　　PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENCE

### A.　　Plaintiffs Fail to Establish a General Duty

There is no general duty to protect a plaintiff from the intentional wrongdoing of third parties. Mot. 13. Plaintiffs attempt to undermine the authorities Google cited in its Motion on the ground that they arise in different factual contexts. Opp. 4.[9] That misses the point. Google cited those cases for the governing principles they articulate—namely, that there is no general duty to protect another from the conduct of third parties absent a special relationship, and that ordinary commercial relationships do not, without more, create such a duty. Plaintiffs' attempt to impose on Google a duty to prevent the independent conduct of Meta directly violates those core principles.

To escape this well-established rule, Plaintiffs look for support in a line of data breach cases holding that companies owe a duty to safeguard against the breach of sensitive information they collect and store. *See* Opp. 3 (citing *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 634 (N.D. Cal. 2024); *Stasi v. Inmediata Health Group Corp.*, 501 F. Supp. 3d 898 (S.D. Cal. 2020); *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024 (N.D. Cal. 2019)). That duty is entirely absent here, where Plaintiffs allege Meta violated Google policies and abused its legitimate access to a common feature in all operating systems (the localhost port) to identify and de-anonymize browsing history using the Meta apps installed on Plaintiffs' phones. Compl. ¶¶ 49; 52; 65, 130; Opp. 8.

### B.　　Plaintiffs Fail to Establish the "Special Relationship" Exception Applies

Because Google has no general duty to protect Plaintiffs or their data, Plaintiffs must allege a special relationship to show duty. To do so, the Court first "assesses whether there is a special relationship between the parties or some other set of circumstances giving rise to an affirmative duty to protect." *Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal. App. 5th 410, 420 (2022) (internal quotation marks omitted). If so, the court then considers "whether relevant policy considerations counsel

---

[9] Plaintiffs characterize *Impac Warehouse Lending Group v. Credit Suisse First Boston LLC*, 270 F. App'x 570 (9th Cir. 2008), *Patel v. Citibank Corp.*, 2019 WL 7987113 (C.D. Cal. Sept. 27, 2019), and *Girard v. Delta Towers Joint Venture*, 20 Cal. App. 4th 1741 (1993) based on their specific facts. Opp. 4. But the principles those cases articulate—that there is no duty to protect against third-party conduct absent a special relationship, and that ordinary commercial relationships do not give rise to such a relationship—are not limited to their particular facts. Plaintiffs' attempt to cabin those holdings to their precise circumstances would render the special-relationship doctrine meaningless.

limiting that duty, looking to the policy factors identified in *Rowland v. Christian*, 70 Cal.Rptr. 97 (1968)." *Id.* Plaintiffs fail each part of the inquiry.

### 1.    Plaintiffs Fail to Allege a Special Relationship

Plaintiffs cannot manufacture a "special relationship" with Google. A special relationship is an exception that arises in very narrow circumstances. *See* Mot. 13–14. The relationship alleged here—that of consumers and the architect of an operating system that is used by a large variety of phone manufacturers in many models—is nothing of the sort. Rather, it is precisely the kind of "ordinary commercial relationship" that California courts have declined to elevate to a special relationship. *See Girard*, 20 Cal. App. 4th at 1749 (no special relationship between commercial landlord and tenant where their relationship was an ordinary commercial one); *Ziencik v. Snap, Inc.*, 2024 WL 6846238, at *3 (C.D. Cal. Jan. 19, 2024) (no special relationship between social media app and its users).

Plaintiffs' invocation of *Regents of University of California v. Superior Court*, 4 Cal. 5th 607 (2018) ("*Regents*"), which purported to describe factors common to special relationships, does not alter that conclusion. Google addresses each:

**Dependency.** Dependency refers to circumstances in which the plaintiff is particularly vulnerable and the defendant has assumed responsibility for the plaintiff's protection. *Regents*, 4 Cal. 5th at 620–21. Plaintiffs argue Android users "depend" on Google to protect their data, Opp. 4–5, simply because the Android system was installed in the phones they bought from (non-Google) manufacturers. But ordinary consumer use of a software included in a product does not create that kind of dependency. For example, in *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1039 (N.D. Cal. 2021), the court held, in the context of the economic loss rule, that there was no special relationship where plaintiffs "were no different from any other purchaser of the same product[.]"[10] *See also Bogard v. TikTok Inc.*, 2025 WL 3637035, at *7 (N.D. Cal. Dec. 15, 2025) (finding no special relationship between plaintiffs and social media platform by virtue of platform

---

[10] "The factors California courts weigh to determine whether there is a special relationship [in evaluating whether the economic loss rule applies] are essentially the same as the factors used to consider whether a duty exists in the first place." *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1021 (N.D. Cal. 2024) (citing *Rowland*, 69 Cal. 2d at 113)).

use); *Ziencik*, 2024 WL 6846238 at *3 (same).[11]

**Superior Control.** Plaintiffs contend that only Google could fix the localhost vulnerability and thus it had superior control. Opp. 5. But that rings hollow where, as here, the tracking methodology was alleged to have been covert and previously unknown, and there was "no evidence of real-world abuse for persistent user tracking across platforms . . . until [researchers'] disclosure." Dkt. 104-3 (Trebicka Decl. Ex. 1) at 10. One cannot exercise any control (superior or not) over a threat one did not know about.

**Defined Boundaries.** The defined boundaries factor requires a relationship "limited [to a] community, not the public at large." *Regents*, 4 Cal. 5th at 620. Android users are not a "community," *see* Opp. 5—they are the purchasing public for a variety of different products (phones) in which the manufacturers (not Google) have decided to include the Android operating system. Plaintiffs' own class definition encompasses hundreds of millions of consumers who have used mass-marketed phones with a certain operating system. That is an even looser universe of Plaintiffs than the type found too broad and generic in *Girard*. 20 Cal. App. 4th at 1749. Plaintiffs' logic would create massive "communities" of users of *all* products with, say, an Intel chip, a result irreconcilable with *Girard* and the California Supreme Court's instruction that special relationships are defined by their limited scope, not the breadth of a product's reach. *Regents*, 4 Cal. 5th at 620.

**Benefit.** Plaintiffs argue that Google benefits from the purported relationship because customers purchase Android devices. Opp. 5. But so does every manufacturer from every product it sells. Accepting this argument collapses the special relationship doctrine into ordinary commerce.

Plaintiffs' garden-variety consumer relationship with Google is simply not "special" so as to cause software platform providers to owe a duty to protect all consumers of products that incorporate the software from the wrongdoing of third parties. California law specifically forecloses such a result. *Girard*, 20 Cal. App. 4th at 1749.

---

[11]  Although *Bogard* and *Ziencik* arise in the context of Section 230, the courts considered "dependency" in the context of negligence, not Section 230 immunity. *Bogard*, 2025 WL 3637035 at *7; *Ziencik*, 2024 WL 6846238 at *3.

GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED
CLASS ACTION COMPLAINT

## 2.    The *Rowland* Factors Also Forbid Imposing a Duty Here

The *Rowland* factors are relevant only if a special relationship is first established. *See Uber Techs., Inc.*, 79 Cal. App. 5th at 420. Because Plaintiffs cannot establish a special relationship, the Court need go no further.

But, even if this Court were to reach the two *Rowland* factors of "foreseeability" and "public policy concerns of moral blame, preventing future harm, and burden," they weigh against a duty. *Regents*, 4 Cal. 5th at 629.[12]

**Foreseeability.** Plaintiffs contend the localhost exploitation was foreseeable simply because Google designed an operating system that handles valuable user data. Opp. 6–7. Their own allegations contradict that claim. Researchers described Meta's scheme as "novel," and even web developers with direct network visibility failed to detect it for nearly a year. Mot. 2; Compl. ¶¶ 65, 73. Plaintiffs also acknowledge that Meta "shielded its misconduct from Google, web browser developers, and website developers who were puzzled as to why Meta's Pixel was communicating with localhost ports." Dkt. 107 (Opp. to Meta's Motion to Dismiss) at 4. "[A] general knowledge of the possibility of [bad] conduct is not in itself enough to create a duty under California law." *Williams v. Fremont Corners, Inc.*, 37 Cal. App. 5th 654, 668 (2019) (awareness of possibility of violent conduct insufficient to establish the heightened foreseeability required to impose a duty to provide security); *see also Brown v. USA Taekwondo*, 11 Cal. 5th 204, 219 (2021) (the unforeseeability of the specific harm may counsel against imposing a duty). Here, Plaintiffs' theory reduces to the proposition that because Google's platform handles valuable data, ***any*** use of that platform—even a third-party use that was "novel" and concealed—is foreseeable.[13] That is exactly the kind of generic awareness of risk that *Williams* and *Brown* hold insufficient.

---

[12] Plaintiffs again cite *Accellion* and *Bass*, this time in support of imposing a duty on technology companies based on the *Rowland* factors. But neither case addresses the *Rowland* factors. As explained in Section II.A, those cases are distinguishable because they address data breach, not improper use of a commercial actor's access to a communication port.

[13] Plaintiffs cite Google's Android 17 localhost permission changes as evidence that a fix was available and should have been foreseeable to Google. Opp. 9 n.3. This is not an allegation in the Complaint and should not be considered on a motion to dismiss. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In any event, that Google later implemented a precautionary measure is not indicative of foreseeability and cannot form the basis of negligence. *See supra* Section I.B.4.

GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED
CLASS ACTION COMPLAINT

**Policy and Moral Blame.** Imposing a duty on Google to anticipate and design against every conceivable misuse of legitimate system features by sophisticated third-party developers would force platforms toward increasingly closed, restrictive architectures at the expense of interoperability, user functionality, and platform innovation. *See Dyroff v. Ultimate Software Grp., Inc.*, 2017 WL 5665670, at *14 (N.D. Cal. Nov. 26, 2017), *aff'd*, 934 F.3d 1093 (9th Cir. 2019) ("[I]mposing a duty . . . would . . . have a 'chilling effect' on the [I]nternet by opening the floodgates of litigation."). Indeed, even if the other *Rowland* factors weighed in favor of recognizing a duty, where doing so would create indeterminate and sweeping liability, that concern alone justifies a no-duty rule. *See, e.g., Kuciemba v. Victory Woodworks, Inc.*, 14 Cal. 5th 993, 1031 (2023) (no duty even where foreseeability factors favored a duty, because imposing liability would "throw open the courthouse doors to a deluge of lawsuits"). Moreover, whatever moral blame there may be about the circumvention of Android's protective features certainly does not lie with Google.

### C.    Plaintiffs Fail to Allege Breach of a Duty

Plaintiffs identify no standard requiring Google to restrict localhost access, no regulation mandating monitoring, and no benchmark establishing that Google's design fell below reasonable care. Mot. 15. In lieu of identifying a standard of care or a breach, as required, *id.*, Plaintiffs respond that the burden to plead breach in a data breach case (which this case is not) is low, and that their technical allegations describing Google's "overly permissive" localhost design are sufficient to clear that hurdle. Opp. 8. They are not.

The localhost architecture is a standard feature of mobile operating systems, used for "legitimate purposes such as web development." Dkt. 104-3 at 3, 10. What Meta did was a "weird protocol misuse" of access that Android legitimately provides. Dkt. 104-4 (Trebicka Decl. Ex. 2) at 4. Plaintiffs cite no authority suggesting that maintaining standard localhost functionality violates any duty of care, particularly where the alleged misuse was novel and previously unidentified. Technical detail about Meta's scheme, Opp. 8, describes what Meta did—not what Google failed to do.

Nor do Apple's design choices establish a standard of care. Plaintiffs concede Google was not required to copy Apple's architecture, Opp. 9, and a competitor's alternative design does not

define reasonable care, Mot. 15–16 (collecting cases). Even if Apple's architecture choices were somehow instructive (they are not), the researchers on which Plaintiffs rely acknowledged that "similar data sharing between iOS browsers and native apps is technically possible." Dkt. 104-3 at 13; Compl. ¶ 86. The Complaint selectively quotes the researchers to allege that "[t]echnical and policy restrictions for running native apps in the background may explain why iOS users were not targeted by these trackers." *Id*. But the full quote confirms that the researchers' "*iOS analysis is still preliminary* and this behavior *might have also violated PlayStore policies*." Dkt. 104-3 at 13 (emphasis added). And indeed, the Complaint repeatedly refers to Meta violating "important Android protocols" and "Google's policies." *See, e.g.*, Compl. ¶¶ 130, 134, 146, 166. Plaintiffs cannot now argue they allege Google failed to implement a "security protocol." Opp. 8.

Finally, that outside researchers identified the issue first, *see* Opp. 8, does not establish an industry standard of care or its breach. Plaintiffs identify no monitoring protocol Google was required to follow and failed to implement. Indeed, there was "no evidence of real-world abuse for persistent user tracking across platforms" until the researchers' disclosure, suggesting that neither Apple nor any other industry participant had identified the issue earlier. Dkt. 104-3 at 3, 10.[14]

Unable to articulate any standard of care, Plaintiffs attempt to invoke a *res ipsa*-style inference based on unpublished data breach decisions in *Schmitt v. SN Servicing Corp*., 2021 WL 3493754 (N.D. Cal. Aug. 9, 2021), and *Flores-Mendez v. Zoosk, Inc*., 2021 WL 308543 (N.D. Cal. Jan. 30, 2021), which suggest inadequate security of a breached system may be inferred at the pleading stage. That reasoning does not apply here; as noted, Google is not accused of failing to prevent a data breach. In *Schmitt* and *Flores-Mendez*, hackers penetrated the defendants' own servers, and the defendants' security measures were the instrumentality that failed. Here, Android's localhost functionality operated as designed—the alleged harm resulted from Meta's deliberate misuse of a legitimately functioning feature, not from any failure of Google's security. Nor can Plaintiffs claim informational asymmetry to excuse the absence of a pleaded standard of care. Unlike

---

[14] Plaintiffs again raise "on information and belief" Android 17's localhost changes as evidence of breach, but this was not alleged in the Complaint and cannot be considered on a motion to dismiss. *See Swartz*, 476 F.3d at 763. Moreover, feasibility of a precaution does not establish that failing to implement it earlier was a breach of any duty of care. *See supra* Section I.B.4.

GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED
CLASS ACTION COMPLAINT

in *Flores-Mendez*, where the *res ipsa* inference was available because plaintiffs lacked access to the defendant's internal security details, the granular allegations of Meta's scheme and Google's localhost structure, Compl. ¶¶ 47–49, 52–60, 84–91, contradict the inference Plaintiffs seek.[15]

### D.     Meta's Conduct is a Superseding Cause

A superseding cause relieves a defendant from tort liability where both the intervening act and the resulting harm were not foreseeable, and Meta's alleged conduct satisfies that standard as a matter of law. *See* Mot. 16–17; *see also Chanda v. Fed. Home Loans Corp.*, 215 Cal. App. 4th 746, 756 (2013) ("Whether an intervening force is superseding or not generally presents a question of fact, but becomes a matter of law where only one reasonable conclusion may be reached.").

Plaintiffs argue that because personal data is valuable and routinely targeted, exploitation of localhost ports was foreseeable. Opp. 10–11. That inference does not follow. Value of data may give rise to generalized awareness of a potential risk data will be exploited in some way, but it does not make the local host exploitation alleged here foreseeable. *See Al Shikha v. Lyft, Inc.*, 102 Cal. App. 5th 14, 38 (2024) ("[F]or foreseeability in the context of a duty to protect, '[m]ore than a mere possibility of occurrence is required.'").

Plaintiffs also concede Meta's conduct was novel—security researchers described it as a 'novel' tracking method and 'weird protocol misuse' with no prior analog. Compl. ¶ 33; Dkt. 104-4 at 4; Mot. 17. Meta took active steps to conceal its activities, including from Google and website developers. *See* Compl. ¶¶ 57–59, 71. Even sophisticated web developers with direct network visibility did not detect it for nearly twelve months, *id*. ¶ 73, in part because Meta allegedly "quietly modified" its techniques repeatedly over time to evade detection. *Id*. ¶¶ 33–34, 48, 55, 60. And it was extraordinary—researchers noted that "no evidence of real-world abuse for persistent user tracking across platforms has been reported until our disclosure." Dkt. 104-3 at 10. An unprecedented and concealed scheme is not reasonably foreseeable to Google as a matter of law— nor is the resulting cross-platform tracking accomplished through that scheme.

---

[15] Plaintiffs also mention in passing that Google failed to "timely notify users" of the breach. But they do not dispute that after researchers publicly exposed Meta's conduct, Google publicly addressed the situation and stated Meta's conduct "violates the terms of service for [Google's] Play marketplace." Compl. ¶ 65; Mot.13 n. 5.

GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED
CLASS ACTION COMPLAINT

Plaintiffs criticize Google for not citing any data breach causation cases, but this case does not concern a data breach. Indeed, the term "data breach" appears nowhere in the complaint. In any event, the cases Plaintiffs cite do not help them. In *Facebook Privacy Litigation*, there was no independent bad actor—Facebook itself chose to share user data with third parties without adequate constraints, and the court's analysis was expressly directed at Facebook's "own misconduct with respect to" users' information. 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019). *Baton* involved defendants that received industry-level warnings about specific cybersecurity risks and failed to implement stronger security measures in response. 740 F. Supp. 3d at 910–11. Plaintiffs cannot plausibly allege that Google had any comparable notice of Meta's tracking technique.

Finally, Plaintiffs argue that they seek a limited remedy in this specific localhost situation and that Google would not face "limitless liability." Opp. 11–12. That argument does not excuse pleading deficiencies. Even if Plaintiffs' self-imposed limitation in this case were true, the principles on which Plaintiffs' negligence claim relies are wrong as a matter of law. They would allow a negligence action against any platform developer whose standard functionality is creatively exploited by a sophisticated actor with legitimate access so long as a plaintiff alleges valuable data was handled on the platform. Every major platform handles valuable user data. Every platform feature can be misused, including by entities with legitimate access. The superseding cause doctrine exists precisely to ensure that liability attaches to the wrongdoer, not to (here) the platform that had its legitimate infrastructure exploited without its knowledge or consent.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the claims against Google in their entirety and with prejudice. Plaintiffs do not address Google's argument that the defects identified in the Motion cannot be cured, *see* Mot. § III, and therefore concede that dismissal with prejudice is appropriate if the Court finds the claims inadequately pleaded.

DATED:  March 6, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By */s/ Viola Trebicka*

Viola Trebicka (CA Bar No. 269526)
violatrebicka@quinnemanuel.com
Valerie Roddy (CA Bar No. 235163)
valerieroddy@quinnemanuel.com
Teuta Fani (CA Bar No. 360443)
teutafani@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel:  (213) 443-3000
Fax:  (213) 443-3100

Andrew H. Schapiro (admitted *pro hac vice*)
andrewschapiro@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel:  (312) 705-7400
Fax:  (312) 705-7401

Taylor Ross (admitted *pro hac vice*)
taylorross@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, New York 10016
Tel:  (212) 849-7000
Fax:  (212) 849-7100

*Attorneys for Defendant Google LLC*

GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED
CLASS ACTION COMPLAINT