LATHAM & WATKINS LLP
Serrin Turner (*pro hac vice*)
*serrin.turner@lw.com*
Nicolas Luongo (*pro hac vice*)
*nicolas.luongo@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Brad Baglien (*pro hac vice*)
*brad.baglien@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re Meta Android Privacy Litigation.<br><br>This Document Relates To:<br>All Actions | Case No. 3:25-cv-04674-RFL<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing: July 28, 2026<br>Time: 10:00 a.m.<br>Location: Courtroom 15—18th Floor<br>Judge: Hon. Rita F. Lin |

**NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that on July 28, 2026, at 10:00 a.m., before the Honorable Rita F. Lin, United States District Court, Courtroom 15, 18th Floor, 450 Golden Gate Avenue, San Francisco, California, Defendant Meta Platforms, Inc. ("Meta") will and hereby does move for an order certifying for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) the Court's May 11, 2026 Order granting in part and denying in part Meta's Motion to Dismiss (Dkt. 101) and staying these proceedings pending appeal.

This motion is based on this notice of motion; the memorandum of points and authorities in support thereof that follows; the pleadings, records, and papers on file in this action; oral argument; and any other matters properly before the Court.

**STATEMENT OF ISSUE TO BE DECIDED**

Whether the Court should certify its May 11, 2026 Order for interlocutory appeal to allow appellate review of the following question:

Whether a court can narrow an otherwise broad online privacy agreement based on a plaintiff's allegedly reasonable expectations about what the defendant can do—even where those expectations do not derive from the agreement's terms?

Dated: June 10, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Serrin Turner*
Serrin Turner (*pro hac vice*)
*serrin.turner@lw.com*
Nicolas Luongo (*pro hac vice*)
*nicolas.luongo@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Brad Baglien (*pro hac vice*)
*brad.baglien@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*

505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

*Attorneys for Defendant*
*Meta Platforms, Inc.*

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. ARGUMENT ........ 3

A. The Order Involves a Controlling Question of Law ........ 4

B. There Are Substantial Grounds for Difference of Opinion on the Controlling Question ........ 5

C. Immediate Appeal Would Advance Resolution of the Case and Avoid Protracted Litigation ........ 13

IV. CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Advanced Analogic Techs., Inc. v. Linear Tech. Corp.*,
2006 WL 2850017 (N.D. Cal. Oct. 4, 2006) ........ 14

*Alameda Cty. Flood Control & Water Conservation Dist. v. Dep't of Water Res.*,
213 Cal. App. 4th 1163 (2013) ........ 6

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ........ 8, 10, 14

*Calise v. Meta Platforms, Inc.*,
2026 WL 61483 (N.D. Cal. Jan. 8, 2026) ........ 4, 14

*City of Oakland v. BP PLC*,
969 F.3d 895 (9th Cir. 2020) ........ 13

*Clevenger v. Riviana Foods Inc.*,
2020 WL 2527948 (C.D. Cal. Apr. 7, 2020) ........ 5

*Dameron Hosp. Assn. v. AAA N. California, Nevada & Utah Ins. Exch.*,
229 Cal. App. 4th 549 (2014) ........ 6

*Doe 1 v. GitHub, Inc.*,
2024 WL 4336532 (N.D. Cal. Sept. 27, 2024) ........ 14

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ........ 9

*F.B.T. Prods., LLC v. Aftermath Recs.*,
621 F.3d 958 (9th Cir. 2010) ........ 7

*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*,
109 Cal. App. 4th 944 (2003) ........ 5

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 10

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) ........ 6, 7, 10

*Harper v. Charter Comm'cns LLC*,
2022 WL 1204706 (E.D. Cal. Apr. 2, 2022) ........ 4

*Hollywood Foreign Press Ass'n v. Red Zone Cap. Partners II*,
870 F. Supp. 2d 881 (C.D. Cal. 2012) ........ 6

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
22 F.4th 1125 (9th Cir. 2022) ........ 13

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1981) ........ 3, 4, 13, 14

*In re Facebook, Inc. Internet Tracking Litigation,*
956 F.3d 589 (9th Cir. 2020) ........ 8

*In re Facebook, Inc. Consumer Privacy User Profile Litigation*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 7

*In re Meta Pixel Healthcare Litigation*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 9

*Johnson v. Walmart Inc.*,
57 F.4th 677 (9th Cir. 2023) ........ 5

*L.B. v. LinkedIn Corp.,*
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ........ 9

*Lau v. Gen Digital, Inc.*,
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) (Lin, J.) ........ 11

*Leines v. Homeland Vinyl Prods., Inc.*,
2020 WL 4194054 (E.D. Cal. July 21, 2020) ........ 5

*Lightbourne v. Printroom, Inc.*,
122 F. Supp. 3d 942 (C.D. Cal. 2015) ........ 6

*Mills v. Target Corp.*,
2021 WL 12300105 (C.D. Cal. Oct. 15, 2021) ........ 13

*Nat'l Credit Union Admin. Bd. v. Goldman Sachs & Co.*,
2013 WL 12306438 (C.D. Cal. July 11, 2013) ........ 4

*Nedlloyd Lines B.V. v. Superior Ct.*,
3 Cal. 4th 459 (1992) ........ 13

*Ocean S. v. Los Angeles Cnty.*,
2024 WL 5298601 (C.D. Cal. Dec. 4, 2024) ........ 4

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) ........ 7

*Reese v. BP Exploration (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) ........ 5

*Rollins v. Dignity Health*,
2014 WL 6693891 (N.D. Cal. Nov. 26, 2014) ........ 13

*Roth v. Foris Ventures, LLC*,
2022 WL 21777087 (N.D. Cal. Aug. 19, 2022) ........ 5

*Smith v. Facebook*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ........ 7

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ........ 4, 5, 7, 10

*Stamas v. Cnty. of Madera*,
795 F. Supp. 2d 1047 (E.D. Cal. 2011) ........ 11

*Vons Companies, Inc. v. United States Fire Ins*. Co.,
78 Cal. App. 4th 52 (2000) ........ 6

*Westlands Water Dist. v. United States*,
337 F.3d 1092 (9th Cir. 2003) ........ 10

**STATUTES**

28 U.S.C. § 1292(b) ........ 1, 3, 4

Cal. Civ. Code § 1644 ........ 7

**TREATISES**

Restatement (Second) of Contracts § 211(2) ........ 11

## I. INTRODUCTION

Pursuant to 28 U.S.C. § 1292(b), Meta respectfully moves to certify for interlocutory appeal the Court's May 11, 2026 Order granting in part and denying in part Meta's motion to dismiss and to stay proceedings pending appeal. Meta seeks certification so that the Ninth Circuit can address a purely legal and dispositive question: Whether a court can narrow an otherwise broad online privacy agreement based on a plaintiff's allegedly reasonable expectations about what the defendant can do—even where those expectations do not derive from the agreement's terms? This Court answered that question in the affirmative by holding that, notwithstanding Meta's "capacious[]" Privacy Policy disclosures that it uses "cookies" to "match your activities with your account," a "reasonable user could believe" that a technological limitation ("sandboxing") would prevent Meta from collecting cookies from their Android devices and using them to "perfectly" match their activities with their account—and that Meta's failure to "dispel" those beliefs meant the Privacy Policy did not establish consent to that collection and use. Dkt. 120 ("Order") at 9-10.

The Order satisfies Section 1292(b)'s criteria for interlocutory review. *First*, the question at issue is a "controlling question of law." 28 U.S.C. § 1292(b). It is a pure legal question concerning the applicable standard for contract interpretation, and resolution in Meta's favor would end the case. *Second*, there are "substantial ground[s] for difference of opinion." *Id.* On the one hand, there is Ninth Circuit caselaw holding that broad language in an online privacy agreement should be given effect according to its ordinary meaning; on the other hand, several district courts interpreting such agreements have, like this Court, applied a "reasonable expectations" analysis to narrow language that is otherwise broad. This is a frequently recurring issue of significant importance that the Ninth Circuit should resolve. *Third*, an appeal now would "materially advance the ultimate termination of the litigation," *id.*, because it would either end the litigation as against Meta or, at a minimum, ensure the parties litigate a key question under the proper standard. Interlocutory review would also provide guidance to district courts throughout the Ninth Circuit interpreting online agreements in the myriad privacy cases pending before them.

Accordingly, Meta respectfully requests that the Court certify its Order pursuant to 28 U.S.C. § 1292(b) and stay the case while the appeal is pending.

## II. BACKGROUND

Meta provides online interactive services, including Facebook and Instagram. In order to use the services, a user must agree to Meta's Privacy Policy. The Privacy Policy broadly states: "We collect and receive information from partners, measurement vendors, marketing vendors and other third parties about a variety of your information and activities on and off our Products." Order at 8 (quoting Meta's Privacy Policy). The Privacy Policy provides a list of "examples of information we receive about you," which includes the "[w]ebsites you visit and cookie data," received through tools "like … the Meta Pixel." *Id.* The Privacy Policy further explains that such sharing of cookies and other identifiers by partner websites "helps us match your activities with your [Meta] account, if you have one." *Id.* Meta's Cookies Policy, incorporated by reference in its Privacy Policy, even identifies specific cookies that may be shared with Meta, noting that partner websites may share information from "cookies named _fbc or _fbp," which Meta uses "to personalize content (including ads)," among other purposes. *Id.*

Plaintiffs challenge Meta's use of a functionality that enabled Meta to "match [their] activities with [their] account[s]" while browsing on their Android devices. Plaintiffs allege they reasonably believed, based on their understanding of how "sandboxing" works, that there was a "digital wall between mobile apps" on their Android devices, and that it would prevent an app like Facebook or Instagram from obtaining data from their browser app. Order at 9 (quoting Compl. ¶¶ 47, 71). Based on this alleged reasonable belief, Plaintiffs claim they expected that Meta would not be able to collect cookies from their Android browser in a way that would allow Meta to "perfectly" match their browsing activity to their Facebook or Instagram account. Order at 4, 9. However, in fact, Android devices enable an app to send data to another via "localhost" ports—which, by "design," "simulate a communications channel by allowing 'applications or services running on the device to communicate with each other.'" Order at 4-5. According to Plaintiffs, Meta violated their contrary (but allegedly reasonable) expectation—i.e., their expectation about a "digital wall" separating Android apps—by using a localhost port as part of the Meta Pixel's operations. *Id.* at 4. Specifically, Plaintiffs allege that Meta violated their expectations by modifying the Meta Pixel to transmit the _fbp cookie not just to Meta servers but to the Facebook

or Instagram app on their device, via a localhost port. *Id.* The Facebook or Instagram app could then link the _fbp cookie to the user's Facebook or Instagram account, allegedly allowing Meta to "perfectly deanonymize Android users' browsing activity if they used its apps." *Id.*

Meta moved to dismiss. Among other grounds for dismissal, Meta argued that all of Plaintiffs' claims failed because the Pixel functionality at issue was simply one way that Meta collected cookies from third-party websites and used them to match users' browsing activity to their accounts. Because Meta's Privacy Policy broadly discloses that Meta collects such data (specifically including the _fbp cookie) and uses it to match users' browsing activity to their accounts, and because Plaintiffs did not dispute that they agreed to the Privacy Policy in registering their accounts, Meta argued that Plaintiffs had consented to the data collection and use at issue.

The Court rejected this argument in its order largely denying the motion. Notably, the Court acknowledged that Meta's Privacy Policy includes "capacious[]" disclosures that "Meta broadly collects browsing data, including 'cookie data,'" and that it uses these "cookies" to "match your activities with your account." Order at 9. However, the Court held that the agreement must be interpreted in light of what "a reasonable user could believe" about how cellphone technology works and how it might constrain Meta's ability to accomplish the data collection and use the Privacy Policy describes. Deferring to Plaintiffs' allegations at the pleading stage, the Court concluded that a "reasonable user could believe that, on their Android phones, Meta would only roughly match" users' browsing data to their accounts. *Id.* The Court then held that Meta's Privacy Policy did not establish consent because it "did nothing to dispel those plausibly objectively reasonable beliefs" or to inform users that Meta could "perfectly match Android browsing activity to Meta accounts." *Id.* at 9-10.

## III. ARGUMENT

Under 28 U.S.C. § 1292(b), the Court may certify an order for interlocutory appeal where (1) there is a "controlling question of law," (2) there are "substantial grounds for difference of opinion" on that question, and (3) an immediate appeal would "materially advance the ultimate termination of the litigation." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). Certification under Section 1292(b) is particularly appropriate when "allowing an interlocutory

appeal would avoid protracted and expensive litigation." *Id.* at 1026. Here, Meta seeks certification of the order based on the following question of law: Whether a court can narrow an otherwise broad online privacy agreement based on a plaintiff's allegedly reasonable expectations about what the defendant can do—even where those expectations do not derive from the agreement's terms?

As set forth below, each of the statutory criteria is satisfied here.

### A. The Order Involves a Controlling Question of Law

A question is controlling when resolving it "on appeal could materially affect the outcome of litigation." *In re Cement Antitrust Litig.*, 673 F.2d at 1026. A question is one of law if it is "purely legal" and does not require the Ninth Circuit to "address the parties' factual circumstances in order to decide" it. *Nat'l Credit Union Admin. Bd. v. Goldman Sachs & Co.*, 2013 WL 12306438, at *6 (C.D. Cal. July 11, 2013).

The question here is a purely legal one, as it focuses on whether the court applied the correct interpretive rule in construing a contract. *See Ocean S. v. Los Angeles Cnty.*, 2024 WL 5298601, at *4 (C.D. Cal. Dec. 4, 2024) ("whether the district court applied the correct legal standard" is a "pure legal question" suitable for certification (citation omitted)). There is no dispute that "Facebook's Terms and Policies 'constitute[] a valid contract.'" *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8 (9th Cir. 2018). Further, unlike in many other cases, there is no threshold dispute here over whether the contract was validly entered. *See* Order at 9 (finding Plaintiffs "implicitly allege that they agreed to the Privacy Policy"). Rather, the only question is how the contract should be interpreted. And "[u]nder California law, the interpretation of contract language is a question of law." *Calise v. Meta Platforms, Inc.*, 2026 WL 61483, at *1 (N.D. Cal. Jan. 8, 2026) (citation omitted) (certifying contract question for interlocutory appeal); *Harper v. Charter Comm'cns LLC*, 2022 WL 1204706, at *1 (E.D. Cal. Apr. 2, 2022) (same).

This question of law is "controlling" because reversal by the Ninth Circuit would require dismissal of all of Plaintiffs' claims. Each of Plaintiffs' claims against Meta turns on whether they consented to the practices at issue. *See* Order at 7 ("The parties agree that consent, or lack thereof, is either a defense to or an element of Plaintiffs' claims against Meta."). If Meta is right about how the contract should be interpreted, then Meta secured consent and Plaintiffs' claims must be

dismissed. *See, e.g.*, *Smith v. Facebook*, 745 F. App'x 8, 9 (9th Cir. 2018) (affirming dismissal based on consent secured through Meta's Privacy Policy); *see also Roth v. Foris Ventures, LLC*, 2022 WL 21777087, at *1 (N.D. Cal. Aug. 19, 2022) (finding the "controlling question" requirement readily satisfied where "the entire case would be dismissed" upon reversal).

**B. There Are Substantial Grounds for Difference of Opinion on the Controlling Question**

How to interpret the scope of an online data-privacy agreement is an important and frequently recurring question, as to which courts in this circuit are divided. In particular, courts are divided over whether they must give effect to broad language in the agreement, or whether they can narrow the agreement based on a plaintiff's allegedly reasonable expectations about the defendant's data practices—even where those expectations do not derive from language in the contract, but instead rest on extrinsic factual assumptions, such as assumptions about the defendant's intentions or technical capabilities. Because "'reasonable judges might differ'"—and have differed—"on the correct outcome of [this] issue," there is a "credible basis for a difference of opinion," warranting interlocutory review. *Clevenger v. Riviana Foods Inc.*, 2020 WL 2527948, at *3 (C.D. Cal. Apr. 7, 2020) (quoting *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 687 (9th Cir. 2011)).

Outside the context of online privacy agreements, the proper approach to this aspect of contractual interpretation is well established and straightforward. For a court "[t]o determine the reach of a particular agreement, [it] must look to its express terms." *Johnson v. Walmart Inc.*, 57 F.4th 677, 682 (9th Cir. 2023) (citation omitted). "It is the objective intent, as evidenced by the words of the contract" that governs, while "[t]he parties' undisclosed intent or understanding is irrelevant." *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003) (citation omitted). Although in certain circumstances a court may consider extrinsic facts in interpreting an agreement—e.g., the industry understanding of a technical term in a contract—"'it is essential' that the evidence be tethered 'to particular language' in the agreement." *Leines v. Homeland Vinyl Prods., Inc.*, 2020 WL 4194054, at *7 (E.D. Cal. July 21, 2020) (quoting *Alameda Cty. Flood Control & Water Conservation Dist. v.*

*Dep't of Water Res.*, 213 Cal. App. 4th 1163, 1188 (2013)). That is, "extrinsic evidence … may be used to interpret the words chosen, but not to add, subtract, or vary the words used in the written agreement." *Hollywood Foreign Press Ass'n v. Red Zone Cap. Partners II*, 870 F. Supp. 2d 881, 917 (C.D. Cal. 2012). Fundamentally, the court's "function is to determine what, in terms and substance, is contained in the contract, not to insert what has been omitted. [Courts] do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there." *Dameron Hosp. Assn. v. AAA N. California, Nevada & Utah Ins. Exch.*, 229 Cal. App. 4th 549, 569 (2014) (quoting *Vons Companies, Inc. v. United States Fire Ins*. Co., 78 Cal. App. 4th 52, 58-59 (2000)).

An example of the application of these principles is found in *Lightbourne v. Printroom, Inc.*, 122 F. Supp. 3d 942, 948 (C.D. Cal. 2015). In that case, a college football player sued a licensee of his university over the sale of athletic photographs containing his image. *Id.* at 943-44. Even though the plaintiff had signed a broad consent form allowing the licensee to "use, sell and distribute" any photographs taken in connection with his participation in intercollegiate athletics, the plaintiff argued that he did not understand the consent form to allow his image to be used "for a commercial purpose," pointing to NCAA rules allegedly prohibiting the use of a student-athlete's likeness for commercial purposes. *Id.* at 945-46. The court rejected the plaintiff's argument, finding that the contractual language was "clear and unambiguous," and that the plaintiff's "internal understanding—to the extent it differs—is irrelevant." *Id.* at 948. The court likewise found the extrinsic evidence cited by the plaintiff as the basis for his understanding to be "of no moment," because it was not relevant "to explain the meaning" of the parties' written contract. *Id.*

Courts have repeatedly held that contractual interpretation should work the same way in the context of online agreements to privacy policies. Thus, in *Hammerling v. Google, LLC*, 2024 WL 937247 (9th Cir. Mar. 5, 2024), the Ninth Circuit emphasized that the words of the agreement control—not the expectations users may independently have about what the defendant can do. The plaintiffs in that case alleged that Google improperly tracked user activity on third-party apps on Android phones, and the question was whether Google's privacy policy disclosed that conduct. The policy stated that Google received data about "activity on third-party … apps that use [its]

services," and it defined "services" to include "the Android operating system." *Id.* at *1. Thus, on its face, the policy disclosed that Google could collect data about users' activity on third-party apps running on Android. Nonetheless, the district court agreed with the plaintiffs that it was "counterintuitive[]" to construe the policy this way, because it meant that Google could collect information from "*every single* app" running on Android. *Id.* at *2 (emphasis in original). The district court held that it was "at least as plausible that a reasonable consumer would read" the agreement only to apply to apps requiring users to sign into Google services. *Id.* On appeal, the Ninth Circuit rejected this reasoning, finding that the policy "unambiguously discloses Google's collection of user activity data in third-party apps." *Id.* The Ninth Circuit explained that, even in the context of an online privacy policy, "[t]he words of a contract are to be understood in their ordinary and popular sense ... unless used by the parties in a technical sense, or unless a special meaning is given to them by usage." *Id.* (quoting Cal. Civ. Code §1644). While the Ninth Circuit acknowledged that the sweep of the language in Google's policy was "broad," it refused to narrow "that definition simply because it may deviate from our expectations." *Id.*

*Smith v. Facebook*, 262 F. Supp. 3d 943 (N.D. Cal. 2017), is likewise illustrative. There, the district court held that Meta's broad disclosures that it receives "information" from "third-party websites" put the plaintiffs on notice that Meta could receive even health-related browsing data. *Id.* at 953. Although plaintiffs argued the disclosure was too "broad" to secure consent, the court explained that "a contractual term is not ambiguous just because it is broad." *Id.* at 954 (quoting *F.B.T. Prods., LLC v. Aftermath Recs.*, 621 F.3d 958, 964 (9th Cir. 2010)). The Ninth Circuit affirmed, focusing on the terms of the disclosures and concluding that "[a] reasonable person viewing those disclosures" would understand Meta could receive the data at issue. *Smith*, 745 F. App'x at 8. Other courts have similarly concluded that the language in an online data-privacy agreement controls even if its effects are surprising or unanticipated. *See Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1213 (N.D. Cal. 2014) (refusing to narrowly construe disclosure that LinkedIn would collect Google Contacts, even where that resulted in allegedly unanticipated collection of every contact the user had ever emailed with via Google); *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767, 792 (N.D. Cal. 2019) (finding

that, based on what the relevant policies "told users," the plaintiffs consented to app developers collecting information the users shared with their Facebook friends, notwithstanding their belief that this would not occur if they set their Facebook privacy settings to "friends only").

Where the Ninth Circuit *has* considered a user's "reasonable expectations" in interpreting an online privacy agreement, it has been where those expectations are based on specific language in the contract—rather than beliefs held independently from the language in the contract. For example, in *In re Facebook, Inc. Internet Tracking Litigation*, the Ninth Circuit found that, notwithstanding Facebook's general disclosures that it collected browsing activity from third-party websites, a reasonable user plausibly would expect Facebook not to do so when they were logged out—because the disclosures included "affirmative statements" indicating that Facebook's data collection would be limited in this way. 956 F.3d 589, 603 (9th Cir. 2020) (finding that the plaintiffs plausibly alleged lack of consent based on "Facebook's affirmative statements that it would not receive information from third-party websites after users had logged out"). Similarly, in *Calhoun v. Google, LLC*, the Ninth Circuit found that, notwithstanding Google's general disclosures that it collects information about users' browsing activity when they use Google's services, a reasonable user would expect Google not to collect such information from the Google Chrome browser when the browser's "Sync" setting was turned off—because, again, Google's policies contained specific language indicating that. 113 F.4th 1141, 1149 (9th Cir. 2024). This "affirmative statement," the *Calhoun* court concluded, put the case "more in line with *Internet Tracking Litigation* than with *Smith* or *Hammerling*." *Id.* In other words, the *Calhoun* court distinguished between what it was doing—determining how a reasonable user would *construe narrowing language* in the contract—versus what the plaintiffs sought to do in *Smith* or *Hammerling*—*narrow otherwise broad language* based on "reasonable expectations" they allegedly held independently from the contract.

Some courts, however, have read the caselaw in this area to suggest that an otherwise broad online privacy agreement can be narrowed by crediting a plaintiff's alleged reasonable expectations about the defendant's practices, even when those expectations are *not* rooted in specific language in the agreement. A number of courts, for example, have credited allegations

that users reasonably expect that "sensitive" information about them, such as medical or financial information, will not be tracked through cookies and related technology. As a result, those courts have found that users cannot be deemed to consent to the collection of such information, notwithstanding their agreement to broad disclosures that the defendant could collect their browsing activity. In *L.B. v. LinkedIn Corp.*, for example, the court held that "LinkedIn's disclosures provide sufficient notice of its general [data] collection practices," including that it used cookies and similar technologies to "track [users'] data from third-party websites." 2025 WL 2899514, at *5 (N.D. Cal. Oct. 10, 2025). But the court nonetheless found that collection of "medical-related information" fell "outside the plaintiffs' reasonable expectations"—even though the agreement itself said nothing to indicate that such information was excluded from its otherwise broad language. *Id.* at *6. A number of other courts have reasoned similarly. *See, e.g.*, *In re Meta Pixel Healthcare Litigation*, 647 F. Supp. 3d 778 (N.D. Cal. 2022) (acknowledging broad disclosure, but concluding plaintiffs would not expect certain information to be shared); *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *6 (W.D. Wash. Dec. 19, 2023) (similar).

This Court followed a similar approach here. Just as those courts credited allegedly reasonable expectations about what types of browsing data the defendant could collect and match to user accounts, this Court credited allegedly reasonable expectations about *how* Meta could collect browsing activity and match it to user accounts. The Court acknowledged that Meta's "Privacy Policy capaciously explains that Meta broadly collects browsing data, including 'cookie data' and '[h]ow you use our partners' products and services,'" and that such information "is shared with Meta to help 'match your activities with your account.'" Order at 9. And it is undisputed that the Pixel functionality at issue helped Meta do just that. Yet the Court ruled that Meta did not obtain consent because "a reasonable user could believe"—based on their understanding of how cellphone operating systems work, not anything that Meta said in the agreement—that Meta could only match browsing activities from their phones "roughly," rather than "with perfect confidence." *Id.* at 9-10. The Court thus looked outside "the four corners of the Privacy Policy" to find lack of consent, rather than focusing on "just the plain text" of the agreement. *Id.* at 10.

There is at least a reasonable chance that the Ninth Circuit would reject this approach to interpreting an online privacy agreement and conclude that the analysis should focus on the scope of the language the Privacy Policy uses to describe Meta's practices—rather than on Plaintiffs' background expectations about Meta's capabilities or how Android devices work. As noted, multiple Ninth Circuit panels have given effect to broad language in online data-privacy agreements, even where the consequences of the language might "deviate[] from expectations" of ordinary users. *Hammerling*, 2024 WL 937247, at *2; *see Smith*, 745 F. App'x at 9.[1] The approach taken by the Court here conflicts with these decisions by venturing beyond the question of what the contractual text itself *means* and instead reading limitations into the text, based on alleged "reasonable expectations" that users have separate and apart from the contract.

Again, a comparison with *Hammerling* is instructive. There, the district court similarly found that the plaintiffs had "plausibl[y]" alleged that a "reasonable consumer" would not expect Google to collect data from every app on their phone. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1083 (N.D. Cal. 2022). But the Ninth Circuit rejected that reasoning and found that such "expectations" were insufficient to "deviate" from the otherwise broad language in the contract. *Hammerling*, 2024 WL 937247, at *2. It is difficult to see any material difference between the "reasonable expectation" in *Hammerling* that Google would only collect data from certain apps on users' phones and the "reasonable expectation" alleged here that Meta could only "roughly" match users' browsing activity from their phones. In both instances, the expectations at issue do not purport to derive from the contractual language. The Ninth Circuit could thus easily conclude here, as it did in *Hammerling*, that a court should not "deviate" from the broad language in Meta's Privacy Policy based on these sorts of unwritten expectations, regardless of how "reasonable" they are alleged to be in their own right. *See Westlands Water Dist. v. United States*, 337 F.3d 1092, 1103 (9th Cir. 2003) ("A court cannot, under the guise of construction, add words to a contract, which would impermissibly re-write that contract." (citation omitted)).

---

[1] While both *Hammerling* and *Smith* were unpublished decisions, the Ninth Circuit endorsed the holdings of both in the published decision in *Calhoun*, 113 F.4th at 1149. And in any event, the fact that multiple Ninth Circuit panels found that broad contractual language trumps any user "expectations" to the contrary shows at the least that there is a reasonable ground for disagreement on the issue.

Further, a rule of interpretation based on "reasonable expectations" raises challenging questions about how a court is supposed to decide *which* "reasonable expectations" should govern the contract analysis—as there are often different possible expectations that reasonable people may hold. In particular, when it comes to how technology works, people have widely varying beliefs (or no beliefs at all) depending on how technically savvy they are. Here, for example, while the court held that a "reasonable user could believe" that there is a "digital wall between mobile apps" that would prevent a user's browser from sending data to another app on their device, it is equally true that a *different* "reasonable user"—one who is better informed—could believe that things aren't so simple, and that Android devices, as alleged in the Complaint, include a localhost channel that is "*intended* to allow different Android programs or applications to communicate with one another"—just "as if they were communicating over a network." Compl. ¶¶ 50, 52-53 (emphasis added). Why should the former (false) "reasonable belief" nonetheless govern the interpretation of the agreement, rather than the latter (true) "reasonable belief"? Indeed, if the meaning of an online agreement were to turn on what a "reasonable user *could* believe"—separate from the language of the contract—the result would be that the agreement would lack any determinate meaning, because reasonable people can believe different things. That is contrary to "the objective theory of contracts, under which '[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation.'" *Stamas v. Cnty. of Madera*, 795 F. Supp. 2d 1047, 1083 (E.D. Cal. 2011) (citation omitted); *see also* Restatement (Second) of Contracts § 211(2) ("[A] writing is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.").[2] Courts would benefit from the Ninth Circuit's guidance on whether, and if so how, they must resolve these difficult interpretative questions.

In addition to these doctrinal concerns, the Ninth Circuit could also have practical concerns about the "reasonable expectations" approach reflected in the Court's order—including about what

---

[2] *Cf. Lau v. Gen Digital, Inc.*, 2024 WL 1880161, at *2 (N.D. Cal. Apr. 3, 2024) (Lin, J.) (finding that plaintiffs had reason to know that defendant was a party to their browsing communications as a result of installing defendant's software, notwithstanding that the software "allegedly did not work in the manner that the plaintiffs' expected").

it means for how online privacy policies are drafted. The Court found Meta's Privacy Policy to be deficient because it "did nothing to dispel" Plaintiffs' "plausibly objectively reasonable beliefs" about how cellphones work—namely, their beliefs that there is "a digital wall between mobile apps" making it impossible for their browser to send data to another app on their device. Order at 9-10. But if companies must anticipate every mistaken but "plausibly objectively reasonable" belief a user could have about technology—and dispel such beliefs in their privacy policies—those policies would become unmanageable for companies to write and impossible for users to follow. The Court itself recognized this potential tradeoff at oral argument, commenting:

> I think there is a concern about how do we set up a regime where companies can make sure that they're disclosing what they need to without requiring them to disclose every possible scenario that could happen with all of its factual permutations. I mean, I think this [i.e., Meta's Privacy Policy] is a pretty good disclosure I think overall and so it's – it's hard for me to imagine what it is they should have written in their privacy policy that they didn't.

Mot. to Dismiss Hr'g Tr. at 20-21. The Ninth Circuit could have this same concern, but conclude that it weighs in favor of giving effect to Meta's disclosures as written. At a minimum, this Court's recognition of the problem underscores that the question presented is an important and difficult issue that warrants consideration by the Ninth Circuit.

The Ninth Circuit could likewise have practical concerns about companies' ability to rely on their privacy policies for legal protection if broad policy language can be trumped by a plaintiff's alleged "reasonable expectations" to the contrary. Here, for example, the Court held that it was bound to credit Plaintiffs' allegations about their "reasonable expectations" on a motion to dismiss.[3] But any plaintiff can allege they "reasonably" expected that a defendant company could not collect or use data from them in certain circumstances. For example, a plaintiff might allege that they reasonably expected that a defendant could not track their browsing activity online if they cleared their cookies before each browsing session, or if they connected to the internet through a VPN, or if they used a different username on every website they visited. If such allegations were all that is needed to survive a motion to dismiss, companies could no longer rely on their privacy

[3] *See* Mot. to Dismiss Hr'g Tr. at 11:5-8 (stating that "I have to assume that [Plaintiffs are right] at this stage, that people's objectively reasonable expectation is that when they use their phone, the apps on their phone don't talk to each other").

policies as a means of obtaining broad consent to their data-collection practices. That undermines part of the point of obtaining consent in the first place—which is to obtain protection not just from ultimate liability, but also from the burden and expense of litigation. *See Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 469-70 (1992) (explaining that "the manifest purpose" of a "broad" contract term "is precisely to avoid" "a protracted litigation battle concerning [a] threshold question"); *see also City of Oakland v. BP PLC*, 969 F.3d 895, 910 (9th Cir. 2020) (explaining that threshold defenses are "designed 'to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery'" (citation omitted)).

In short, there is at least a reasonable possibility that the Ninth Circuit would disagree with this Court's consent holding. Interlocutory review now, rather than after final judgment, could save the parties—and this Court—years of time and expense, by resolving this threshold legal question at the outset. Moreover, given that district courts "have, in fact, disagreed" on how to interpret data-privacy agreements, interlocutory review would provide much-needed guidance for courts throughout the circuit. *Rollins v. Dignity Health*, 2014 WL 6693891, at *3 (N.D. Cal. Nov. 26, 2014).

### C. Immediate Appeal Would Advance Resolution of the Case and Avoid Protracted Litigation

The third criterion is easily satisfied. An appeal will "materially advance the ultimate termination of the litigation" where its resolution "may appreciably shorten the time, effort, or expense of conducting the lawsuit." *In re Cement Antitrust Litig.*, 673 F.2d at 1026-27; *see also ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130-31 (9th Cir. 2022). As explained above, consent is either a defense to or element of each of Plaintiffs' nine claims against Meta. A Ninth Circuit decision holding that Meta's Privacy Policy establishes consent to the challenged conduct would therefore require dismissal of all of Plaintiffs' claims. Thus, "there is no question that … the case will be over" if Meta prevails on appeal. *Mills v. Target Corp.*, 2021 WL 12300105, at *5 (C.D. Cal. Oct. 15, 2021).

Certification would also "avoid protracted and expensive litigation" by providing guidance before the parties embark on discovery and trial preparation. *In re Cement Antitrust Litig.*, 673

F.2d at 1026; *see also Advanced Analogic Techs., Inc. v. Linear Tech. Corp.*, 2006 WL 2850017, at *3 (N.D. Cal. Oct. 4, 2006) (certifying interlocutory appeal to obtain guidance "before embarking on potentially lengthy and costly litigation"). Consent is a "threshold issue[]" in this case. *Calise*, 2026 WL 61483, at *2. Even if the Ninth Circuit does not agree with Meta, its guidance on the consent inquiry will inform how the parties litigate this issue and ensure that the parties and the Court focus on the correct inquiry. *Cf. Calhoun,* 113 F.4th at 1148-49 (reversing where district court held 7.5-hour evidentiary hearing on question that the Ninth Circuit ultimately held was irrelevant to consent).

Finally, given the proliferation of privacy claims premised on pixel and cookie-based data collection, "[t]he Ninth Circuit resolving this issue would materially advance not only this particular case, but others in the Circuit raising the same issue." *Doe 1 v. GitHub, Inc.*, 2024 WL 4336532, at *2 (N.D. Cal. Sept. 27, 2024). Courts are regularly being called upon to interpret privacy policies and consider whether they establish consent to challenged conduct. The Ninth Circuit is aware of the need to provide guidance on threshold issues in privacy litigation—it recently granted a petition for interlocutory appeal in another case raising threshold questions about standing for CIPA claims. *See* Order, *Drummer v. CoStar, Inc.*, No. 26-1160 (9th Cir. Mar. 18, 2026). It should get the same opportunity to weigh in here.

## IV. CONCLUSION

For all of the foregoing reasons, the Court should certify its Order for interlocutory appeal and stay the case while the appeal is pending.

Dated: June 10, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ *Serrin Turner*

Serrin Turner (*pro hac vice*)
*serrin.turner@lw.com*
Nicolas Luongo (*pro hac vice*)
*nicolas.luongo@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200

Brad Baglien (*pro hac vice*)
*brad.baglien@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: +1.202.637.2200

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

*Attorneys for Defendant*
*Meta Platforms, Inc.*