**BURSOR & FISHER, P.A.**
Philip L. Fraietta (SBN 354768)
50 Main St., Ste. 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Michael W. Sobol (SBN 19485)
Michael K. Sheen (SBN 288284)
Amelia A. Haselkorn (SBN 339633)
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

**MILBERG, PLLC**
Gary M. Klinger (*pro hac vice*)
William Edelman (SBN 285177)
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878

[Additional counsel listed on signature pages]

**AHDOOT & WOLFSON, PC**
Tina Wolfson (SBN 174806)
Theodore W. Maya (SBN 223242)
Alyssa D. Brown (SBN 301313)
Sarper Unal (SBN 341739)
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

*Interim Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

*In re Meta Android Privacy Litigation,*

This document Relates to:

All Actions

Case No. 3:25-cv-04674-RFL

**PLAINTIFFS' OPPOSITION TO META'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL**

Hearing: July 28, 2026
Time: 10:00 a.m.
Location: Courtroom 15, 18th Floor
Judge: Hon. Rita F. Lin

## TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. LEGAL STANDARD ..... 4

IV. ARGUMENT ..... 5

A. The Order Does Not Involve a Controlling Question of Law ..... 5

B. There Is No Substantial Ground for Difference of Opinion as to Any Question of Law ..... 7

1. The Ninth Circuit's consent standard is settled. ..... 7

2. Different outcomes reflect different facts, not different law. ..... 8

3. Meta's policy arguments seek to change the law, not identify a genuine difference of opinion. ..... 10

C. Immediate Appeal Would Delay, Not Materially Advance, the Litigation ..... 11

V. CONCLUSION ..... 14

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 10

*Bullard v. Costco Wholesale Corp.*,
No. 24-cv-03714-RS, 2025 WL 2145074 (N.D. Cal. July 29, 2025) .......... 4

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) .......... *passim*

*Calise v. Meta Platforms, Inc.*,
No. 21-cv-06186-JSW, 2026 WL 61483 (N.D. Cal. Jan. 8, 2026) .......... 6

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1981) .......... 4, 5

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978) .......... 4

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) .......... *passim*

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
966 F. Supp. 2d 1031 (C.D. Cal. 2013) .......... 13

*Diaz v. Intuit, Inc.*,
No. 5:15-cv-01778-EJD, 2018 WL 934875 (N.D. Cal. Feb. 16, 2018) .......... 4

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 10

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 7, 9

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
986 F. Supp. 2d 428 (S.D.N.Y. 2013) .......... 14

*Falck N. Cal. Corp. v. Scott Griffith Collaborative Sols., LLC*,
25 F.4th 763 (9th Cir. 2022) .......... 5

*Frasco v. Flo Health, Inc.*,
No. 21-cv-00757-JD, 2025 WL 1476905 (N.D. Cal. May 22, 2025) .......... 13

*Frasco v. Flo Health, Inc.*,
No. 21-cv-00757-JD, 2025 WL 2680068 (N.D. Cal. Sept. 17, 2025) .......... 9

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Gitson v. Trader Joe's Co.*,
63 F. Supp. 3d 1114 (N.D. Cal. 2014) .......... 13

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 11

*Hammerling v. Google, LLC*,
No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024) .......... 7, 8, 9

*Harper v. Charter Commc'ns, LLC*,
No. 2:19-cv-00902-WBS-DMC, 2022 WL 1204706 (E.D. Cal. Apr. 22, 2022) .......... 6

*Henley v. Jacobs*,
No. C 18-2244 SBA, 2019 WL 8333448 (N.D. Cal. Oct. 25, 2019) .......... 5, 12

*Houghton v. Franco*,
No. CV 23-07145-MWF, 2025 WL 1712354 (C.D. Cal. May 29, 2025) .......... 5, 12

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*,
22 F.4th 1125 (9th Cir. 2022) .......... 4, 5

*James v. Walt Disney Co.*,
No. 23-cv-02500-EMC, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024) .......... 12, 13

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 7, 9

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) .......... 9, 11

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) .......... 10

*Shah v. Fandom, Inc.*,
No. 24-cv-01062-RFL, 2024 WL 6903081 (N.D. Cal. Dec. 16, 2024) .......... 13

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 8, 9

*Smith v. Rack Room Shoes, Inc.*,
No. 24-cv-06709-RFL, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .......... 10

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667-JST, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 7, 9

*Steering Comm. v. United States*,
6 F.3d 572 (9th Cir. 1993) .......... 5

## TABLE OF AUTHORITIES
**(continued)**

**Page**

*A.B. ex rel. Turner v. Google LLC*,
No. 5:23-cv-03101-PCP, 2024 WL 4933345 (N.D. Cal. Dec. 2, 2024) .................. 6

*Wang v. Zymergen Inc.*,
759 F. Supp. 3d 1002 (N.D. Cal. 2024) .................. 5, 6, 12

*Williams v. Alameda Cnty.*,
657 F. Supp. 3d 1250 (N.D. Cal. 2023) .................. 5, 6

**Statutes**

28 U.S.C. § 1291 .................. 4

28 U.S.C. § 1292(b) .................. *passim*

**Treatises**

3 Federal Procedure, Lawyers Edition § 3:212 (2010) .................. 7

## I. INTRODUCTION

Meta Platforms, Inc.'s Motion to Certify Order for Interlocutory Appeal, ECF No. 129 (the "Motion" or "Mot."), should be denied. Interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is a narrow exception to the final-judgment rule, not a mechanism for immediate appellate review whenever a party disagrees with a court's adverse ruling. The Court's Motion to Dismiss Order, ECF No. 120 (the "Order"), did not announce the broad legal rule Meta now attributes to it. Rather, the Order applied the Ninth Circuit's settled consent standard to the specific allegations and disclosures before the Court and held only that Plaintiffs plausibly alleged they did not consent to Meta's surreptitious de-anonymization of their browsing activity, via the Modified Pixel and Modified Meta Apps on mobile devices using the Android operating system.

Meta's proposed appellate question is broader and more abstract than the dispute the Court actually decided. On motions to dismiss, the parties litigated whether Meta's disclosures, read in light of Plaintiffs' allegations about subverting sandboxing protocols through localhost communication ports, plausibly established consent to the specific de-anonymization scheme alleged. The Order resolved that fact-specific question at the pleading stage. Meta now recasts that ruling as a question whether courts may "narrow" broad privacy-policy language based on user expectations. But the Court did not rewrite or narrow Meta's Privacy Policy; it asked whether the policy explicitly notified users of the alleged conduct, as the Ninth Circuit requires.

That framing defect defeats Meta's request. Meta identifies no controlling question of law because its proposed appeal would require the Ninth Circuit to evaluate how reasonable users could understand Meta's disclosures in light of the alleged Android architecture, sandboxing protections, localhost abuse, and covert browser-to-app communication. That is an application of settled consent law to pleaded facts, not a pure legal question that can be resolved without delving into the record. Nor is the issue "controlling" merely because reversal might narrow the claims against Meta; Plaintiffs' negligence claim against Google would remain live even if Meta prevailed.

Meta also fails to show any substantial ground for difference of opinion. The governing Ninth Circuit rule is settled: consent must be actual, and disclosures must explicitly notify users of the conduct at issue as understood by a reasonable user considering the disclosures and circumstances as a whole. Meta's

cases do not reveal a conflict in that standard. They reflect different applications of the same rule to different disclosures and different challenged practices—some policies unambiguously disclosed the conduct alleged, some included limiting statements, and some left ambiguity about whether broad permission covered the specific conduct challenged. That courts have reached different outcomes based upon different facts does not create a legal split.

Finally, immediate appeal would not materially advance this litigation. Meta's motion seeks dismissal only "as against Meta"; it would not terminate the action. Plaintiffs' negligence claim against Google will proceed regardless, and the case will still require discovery into the same Android architecture, sandboxing protections, localhost abuse, covert browser-to-app communications, and alleged course of conduct. Factual development will also better frame the consent question Meta wants the Ninth Circuit to decide now, because that question turns on what users reasonably understood from Meta's disclosures and the attendant circumstances. An immediate appeal would therefore delay the ordinary course of discovery while creating piecemeal appellate review of a pleading-stage ruling.

Meta's request for appellate "guidance" on privacy-policy drafting does not alter the statutory inquiry. Section 1292(b) asks whether this appeal satisfies three mandatory requirements in this case, not whether a losing party would prefer broader appellate commentary. Because the Order presents no pure controlling legal question, no unsettled controlling law, and no appeal that would materially advance termination of this litigation, the Motion should be denied.

## II. FACTUAL BACKGROUND

To address the privacy and security risks inherent in running multiple third-party apps on a single mobile device, operating systems implement a foundational internet security principle called "sandboxing," which prevents unauthorized interactions between apps and protects access to sensitive data or privileged system resources. ECF No. 84 (Consolidated Class Action Complaint) ("Compl.") ¶¶ 1–2, 50–51.[1] Plaintiffs allege that, from September 2024 through at least June 2, 2025, Meta intentionally circumvented sandboxing restrictions on Android mobile devices by modifying the Meta Pixel (the "Modified Pixel") and

[1] Unless otherwise noted, citations in this Factual Background section to "Compl." are to the Consolidated Class Action Complaint, ECF No. 84, which was the operative complaint before the Court on the motions to dismiss. Citations to the First Amended Consolidated Class Action Complaint ("FAC"), ECF No. 122, are used later where relevant to the current operative allegations and present posture of the litigation.

its social media apps (the "Modified Meta Apps") to create a backdoor channel between each person's web browser and their Modified Meta App. *Id.* ¶¶ 4, 24–32, 49, 52, 55–62. As a result, Meta was able to tie a person's browsing information directly to their Meta account information, rendering their web browsing activity *completely non-anonymous and identifiable* in real time. *Id.* ¶¶ 4, 48, 55, 63. Knowing it lacked permission for this covert de-anonymization scheme, Meta deliberately and repeatedly modified its methods, refining its technique and evolving to circumvent privacy updates and public detection for more than ten months. *Id.* ¶¶ 56–64, 65, 67, 69.

Meta moved to dismiss the consolidated complaint, arguing among other things that each of the claims against it failed because Plaintiffs consented to the conduct at issue. *See* ECF No. 101 at 9–12. On May 11, 2026, following a hearing on the matter, the Court issued its Order. Rejecting Meta's consent argument, the Court explained that consent "requires a disclosure to '"explicitly notify" users of the conduct at issue.'" Order at 7 (quoting *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024)). "[I]f a plaintiff could have 'plausibly understood the disclosures as *not* disclosing that [the defendant] would engage in particular conduct,' their claims cannot be dismissed." Order at 8 (quoting *Calhoun*, 113 F.4th at 1147 (citation omitted)). The Court found that although Meta's "Privacy Policy capaciously explains that Meta broadly collects browsing data, . . . a reasonable user could read that as disclosing only that Android browsing data will be broadly collected to be matched imperfectly on some occasions to the user's Meta account." Order at 9. Accordingly, such disclosure did not notify users that "Meta was now able to perfectly deanonymize Android users' browsing activity if they used its apps." *Id.* at 4. The Court further reasoned that "Meta's Privacy Policy did nothing to dispel . . . plausibly objectively reasonable beliefs" that certain privacy measures could "prevent Meta's matching, such as clearing cookies or using incognito mode." *Id.* at 9–10. Such measures "were apparently rendered useless" by Meta's scheme. *Id.*

Meta now seeks interlocutory appeal based on at least three mischaracterizations of the consent issue that the Court decided: "[w]hether a court can narrow an otherwise broad online privacy agreement based on a plaintiff's allegedly reasonable expectations about what the defendant can do—even where those expectations do not derive from the agreement's terms" (Mot. at 1); "whether the court applied the correct interpretive rule in construing a contract" (*id.* at 4); and "whether [courts] must give effect to broad language in the agreement, or whether they can narrow the agreement based on a plaintiff's allegedly

reasonable expectations about the defendant's data practices—even where those expectations . . . rest on extrinsic factual assumptions" (*id.* at 5). As detailed below, regardless of Meta's mischaracterizations (the Court did not "narrow" Meta's privacy policy in any way), Meta fails to identify any question that is appropriate for interlocutory appeal under 28 U.S.C. § 1292(b).

## III. LEGAL STANDARD

Section 1292(b) is a narrow exception to the "final judgment rule," which ordinarily permits appellate review only after final judgment. 28 U.S.C. § 1291; *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022). Because interlocutory review runs counter to the general policy against piecemeal appeals, the Ninth Circuit has repeatedly instructed that § 1292(b) must be applied "sparingly" and only in "exceptional" circumstances. *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026–27 (9th Cir. 1981); *accord ICTSI*, 22 F.4th at 1131; *Couch v. Telescope Inc.*, 611 F.3d 629, 632–33 (9th Cir. 2010).

"[T]he movant bears a heavy burden to show that 'exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Diaz v. Intuit, Inc.*, No. 5:15-cv-01778-EJD, 2018 WL 934875, at *1 (N.D. Cal. Feb. 16, 2018) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)). A party seeking certification must establish three statutory requirements: the order must involve "a controlling question of law," there must be "substantial ground for difference of opinion" on that question, and an immediate appeal must "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). These requirements are jurisdictional: if the statutory prerequisites are not satisfied, interlocutory appeal is unavailable. *Couch*, 611 F.3d at 633. "Even when all three statutory criteria are satisfied, district court judges have unfettered discretion to deny certification." *Bullard v. Costco Wholesale Corp.,* No. 24-cv-03714-RS, 2025 WL 2145074, at *3 (N.D. Cal. July 29, 2025) (citation omitted).

The "controlling question" requirement limits the § 1292(b) certification to a question of law, not a fact-bound challenge to the district court's application of settled law to the pleadings. *ICTSI*, 22 F.4th at 1130. The "substantial ground" requirement asks whether controlling law is genuinely unclear—not whether the losing party disagrees with the Court's reasoning or can identify different outcomes in cases involving different facts. *Couch*, 611 F.3d at 633. And the "materially advance" requirement is not satisfied merely

because reversal might shorten litigation in the abstract; the proposed appeal must realistically and "materially advance" the case toward termination, rather than detour discovery, preserve unresolved claims, or invite piecemeal review of a pleading-stage ruling. *See In re Cement*, 673 F.2d at 1026–27; *Houghton v. Franco*, No. CV 23-07145-MWF (JPRx), 2025 WL 1712354, at *7 (C.D. Cal. May 29, 2025).

## IV. ARGUMENT

Meta has not identified a clear, controlling legal question suitable for interlocutory review. Instead, it asks the Ninth Circuit to revisit this Court's application of settled consent law to the allegations of a well-pled complaint. Nor has Meta shown any substantial ground for difference of opinion in controlling law. The supposed "split" it invokes is no more than courts applying the same reasonable-person standard to *different disclosures* and *different conduct*. And immediate appeal would not materially advance this litigation because it would not terminate the case, would not avoid the fact discovery necessary to resolve Plaintiffs' claims, and would only derail ordinary proceedings in favor of piecemeal appellate review.[2]

### A. The Order Does Not Involve a Controlling Question of Law

Meta fails to identify any controlling question of law that meets the requirements for certification for interlocutory appeal. "A controlling question of law must be one of law—not fact—and its resolution must materially affect the outcome of litigation in the district court." *ICTSI*, 22 F.4th at 1130 (citation omitted); *see also Henley v. Jacobs*, No. C 18-2244 SBA, 2019 WL 8333448, at *2 (N.D. Cal. Oct. 25, 2019) ("The controlling question . . . is a purely legal one that can be resolved quickly without delving into a particular case's facts." (citing *Steering Comm. v. United States*, 6 F.3d 572, 575–76 (9th Cir. 1993))). "A mixed question of law and fact, such as one that requires applying the legal standard to the facts of the case, is not by itself appropriate for certification." *Williams v. Alameda Cnty.*, 657 F. Supp. 3d 1250, 1254 (N.D. Cal. 2023); *accord Wang v. Zymergen Inc.*, 759 F. Supp. 3d 1002, 1010 (N.D. Cal. 2024).

Meta's proposed appellate question—stated in various ways as whether a court can "narrow" an online privacy agreement based on reasonable expectations (*see, e.g.*, Mot. at 1–2, 4–5)—is broader and more abstract than the question the Court actually decided. On Meta's motion to dismiss, the parties

---

[2] Meta's Motion may be denied on the alternative ground that it was filed after Plaintiffs filed the operative FAC, rendering an interlocutory appeal of the Court's Order concerning the original complaint moot. *See Falck N. Cal. Corp. v. Scott Griffith Collaborative Sols., LLC*, 25 F.4th 763, 765–66 (9th Cir. 2022) (dismissing as moot an interlocutory appeal brought pursuant to the collateral order doctrine where an operative amended complaint was filed prior to defendant's notice of appeal).

litigated (and the Court decided) whether Meta's disclosures, read *in light of Plaintiffs' allegations*, plausibly established consent to the specific conduct alleged. The Order resolves that question, holding that because a reasonable user could read Meta's Privacy Policy as disclosing only broad, imperfect matching of browsing activity—not the alleged de-anonymization scheme—consent cannot be established as a matter of law. Order at 9–10. The Court's analysis is consistent with well-settled Ninth Circuit precedent that for there to be actual consent, a defendant's disclosures must "explicitly notify users of the conduct at issue." *Calhoun*, 113 F.4th at 1147 (citation omitted) (quoted in Order at 7). It simply applied that settled precedent to a new set of facts.

Repackaging the Court's ruling as a broad, detached question about whether courts may "narrow" privacy agreements does not transform a fact-bound application of settled law into a controlling question of law. Meta's contract-interpretation authorities do not change that conclusion. *See* Mot. at 4. Those cases involved purely legal questions about contract language—not whether a privacy policy explicitly notified users of particular practices. *See Calise v. Meta Platforms, Inc.*, No. 21-cv-06186-JSW, 2026 WL 61483, at *1 (N.D. Cal. Jan. 8, 2026); *Harper v. Charter Commc'ns, LLC*, No. 2:19-cv-00902-WBS-DMC, 2022 WL 1204706, at *1 (E.D. Cal. Apr. 22, 2022). Because *Calhoun* supplies the governing standard for consent, Meta seeks review of "a 'mixed question of law and fact,' without a 'pure legal question' to tether the appeal." *Williams*, 657 F. Supp. 3d at 1257 (citation omitted); *see also A.B. ex rel. Turner v. Google LLC*, No. 5:23-cv-03101-PCP, 2024 WL 4933345, at *4–5 (N.D. Cal. Dec. 2, 2024) (finding application of "plausibility" standard to allegations in the complaint "is not the kind of legal question generally appropriate for interlocutory certification").

Meta is also wrong that its proposed appellate question is "controlling." *See* Mot. at 4. A question "is not controlling simply because its immediate resolution may promote judicial economy." *Wang*, 759 F. Supp. 3d at 1011 (citation omitted). Nor is a question controlling where, despite the movant's success on appeal, the action would continue as to other claims or parties. *See id.* at 1012. That is true here: even if an appellate court determined that Meta's Privacy Policy did disclose the de-anonymization scheme, such a determination is insufficient to establish as a matter of law that Plaintiffs agreed to such a policy or that it is binding. More importantly, Plaintiffs' negligence claim against Google remains live irrespective of the resolution of any interlocutory appeal.

Because Meta seeks review of a fact-bound consent ruling, not a pure legal question whose resolution would control the case, it cannot satisfy § 1292(b)'s first requirement.

**B. There Is No Substantial Ground for Difference of Opinion as to Any Question of Law**

Interlocutory appeal under § 1292(b) is appropriate only if the district court determines there is a "substantial ground for difference of opinion," by "examin[ing] to what extent the *controlling law* is unclear." *Couch*, 611 F.3d at 633 (emphasis added). "Courts traditionally will find that a substantial ground for difference of opinion exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'" *Id.* (quoting 3 Federal Procedure, Lawyers Edition § 3:212 (2010)).

Rather than identifying a lack of clarity in the controlling law, Meta instead points to cases applying the same consent standard to different facts and urges this Court to reconsider its Order in favor of conclusions Meta prefers. Mot. at 5, 8–10. In the alternative, Meta proffers a series of speculative public policy arguments to have the Ninth Circuit rewrite its longstanding precedent. None of these arguments satisfies Meta's burden to show a "substantial ground for difference in opinion." Indeed, cases involving the Meta Pixel's collection of information from websites have applied the same *Calhoun* standard the Court applied here. *See*, *e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022); *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 WL 4369675, at *9 (N.D. Cal. Oct. 1, 2024).

**1. The Ninth Circuit's consent standard is settled.**

The governing consent standard is straightforward. Consent, whether express or implied, "must be actual," and disclosures must "'explicitly notify' users of the conduct at issue." *Calhoun*, 113 F.4th at 1147 (citation omitted). To determine consent, courts must ask whether "the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization." *Id.* (citation omitted). Every controlling authority, including every Ninth Circuit opinion Meta cites, applies that same reasonable-person standard. *See, e.g.*, *Calhoun*, 113 F.4th at 1147; *Hammerling v. Google, LLC*, No. 22-17024, 2024 WL 937247, at *1 (9th Cir. Mar. 5, 2024); *In re Facebook, Inc. Internet Tracking Litig.* ("*Facebook Tracking*"), 956 F.3d 589, 602 (9th

Cir. 2020); *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8–9 (9th Cir. 2018). *Calhoun* also confirms the application of the consent standard: courts must review the relevant disclosures and decide "whether a reasonable user reading them would think that he or she was consenting" to the specific conduct challenged. *Calhoun*, 113 F.4th at 1148.[3] A single, uniformly recited standard does not create a substantial ground for disagreement.

**2. <u>Different outcomes reflect different facts, not different law.</u>**

Meta's cited cases confirm the point. Rather than reveal disagreement over the governing law, they reflect the *same standard* applied to *different disclosures* and *different conduct*. Mot. at 8–11. "A party's strong disagreement with the Court's ruling is not sufficient for there to be a 'substantial ground for difference,'" and "[t]hat settled law might be applied differently does not establish a substantial ground for difference of opinion." *Couch*, 611 F.3d at 633 (citation omitted). Nor has Meta identified "a single case that conflicts with the district court's construction or application" of controlling law. *Id.* The cases instead fall into ordinary factual categories that are distinguishable from the facts here or confirm this Court's application of the law. And in every instance, they apply the same settled standard—*i.e.*, consent turns on what a reasonable user would understand from the disclosures and the circumstances as a whole.

The first category consists of cases where the disclosures unambiguously covered the challenged conduct. In *Smith*, the plaintiffs conceded "they gave general consent to Facebook's data tracking and collection policies," which disclosed that Facebook "collect[s] information when you visit or use third-party websites and apps that use our Services." 745 F. App'x at 8–9. The plaintiffs argued that the "information" Facebook collected did not cover the "health-related data" at issue. *Id.* The Ninth Circuit disagreed, holding such data, which did not "reveal details of an individual's health status or medical history," was not "so different or sensitive" as to fall outside Facebook's disclosure. *Id.* at 9. In *Hammerling*, Google's Privacy Policy disclosed collection of users' "[a]ctivity on third-party sites and apps that use [Google's] services," and defined "services" to include "the Android operating system." 2024 WL 937247, at *1–2. The Ninth Circuit held such disclosure covered the collection of personal information from third-party apps running on

---

[3] *Calhoun* explained that the dispositive question is "what a 'reasonable user' of a service would understand they were consenting to, not what a technical expert would"—an inquiry that must "take into account the level of sophistication attributable to the general public," not "an experienced business lawyer or someone who is able to easily ferret through a labyrinth of legal jargon." *Id.* at 1148–49, 1151.

the Android operating system. *Id.* Neither *Smith* nor *Hammerling* announced a different consent rule; each held that the applicable disclosures before it unambiguously covered the general data collection practices at issue. Here, by contrast, Plaintiffs challenge a specific and covert de-anonymization scheme, and the Court correctly concluded that Meta's disclosures did not "explicitly notify" users of that conduct. *Calhoun*, 113 F.4th at 1147; Order at 8–10.

The second category involves cases where consent could not be established because otherwise broad disclosures could be narrowly interpreted when read in conjunction with separate and explicit limiting statements. In *Calhoun*, Google's general Privacy Policy stated that it "collects data about users' activity on third-party sites and apps that use Google's services," while a more detailed Chrome Privacy Policy affirmatively stated that Google would not receive certain user information "unless you choose . . . to turn on sync." 113 F.4th at 1150 (citations modified). Accordingly, the Ninth Circuit held "a reasonable user would not necessarily understand that they were consenting" to the collection of certain data when the user chose not to turn on sync. *Id.* at 1149–51. In *Facebook Tracking*, Facebook affirmatively stated that certain data would not be collected when users were logged out "but then collected it anyway." 956 F.3d at 596, 601–03.[4]

A third category—which Meta mostly avoids—includes cases like this one, in which generalized, vague, or imprecise disclosures failed to establish consent to the specific conduct alleged. In *In re Meta Pixel Healthcare Litigation*, Judge Orrick, applying the *Calhoun* standard, found "Meta's policies do not . . . specifically indicate that Meta may acquire *health data* obtained from Facebook users' interactions with their *medical providers' websites.* Its generalized notice is not sufficient to establish consent." 647 F. Supp. 3d at 793 (emphasis in original). Judge Tigar, reading that same policy and applying the same standard, reached the same conclusion in *St. Aubin*, 2024 WL 4369675, at *9, and a jury reading the same policies found "users did not consent to Meta's conduct." *Frasco v. Flo Health, Inc.*, No. 21-cv-00757-JD, 2025 WL 2680068, at *11 (N.D. Cal. Sept. 17, 2025). In *Opperman v. Path, Inc.*, Judge Tigar held that users who gave Yelp permission to "access" or "use" their contacts information did not consent to "the act of uploading" that information to Yelp's servers. 205 F. Supp. 3d 1064, 1073–77 (N.D. Cal. 2016) (observing

[4] While these cases consistently apply the same standard, the holdings are, of course, inapposite because Meta has not disclosed the conduct at issue, and Plaintiffs do not (and need not) rely on an explicitly limiting statement.

that consent "is not absolute, but rather a matter of degree"). In *Brown v. Google LLC*, the court concluded that users could not have consented to the collection of their data while using Google Chrome in private browsing mode because the relevant disclosure "never mentions private browsing mode." 525 F. Supp. 3d 1049, 1063–64 (N.D. Cal. 2021). In *Perkins v. LinkedIn Corp.*, the court held that despite having obtained consent from users to send invitation emails to their contacts, LinkedIn failed to disclose (and therefore failed to obtain consent) to send subsequent reminder emails to those same contacts. 53 F. Supp. 3d 1190, 1215–17 (N.D. Cal. 2014). And in *Smith v. Rack Room Shoes, Inc.*, this Court declined to find consent where plaintiffs alleged third parties collected and analyzed personally identifiable browsing and purchase history, despite the relevant policy stating that information collected through cookies and beacons was not personally identifiable. No. 24-cv-06709-RFL, 2025 WL 1085169, at *2–3 (N.D. Cal. Apr. 4, 2025) (Lin, J.).

Like in this last category of cases, the Court here correctly identified the relevant question: whether Meta's "capacious" representations regarding its general data collection practices disclosed the "perfect" de-anonymization of browsing activity using its Modified Pixel and Modified Meta Apps. The Court answered in the negative, concluding that "a reasonable user in this scenario could believe that the conduct at issue would *never* occur." Order at 7–11. Its reasoning reflects the application of settled law to the pleadings and supplies no substantial ground for difference of opinion.

### 3. **<u>Meta's policy arguments seek to change the law, not identify a genuine difference of opinion.</u>**

Meta's remaining arguments confirm that it seeks a *different standard*—not resolution of a genuine legal dispute over the existing one. Section 1292(b) is not a vehicle for asking this Court (or the Ninth Circuit) to reconsider the settled consent standard simply because Meta disagrees with it. Meta advances three policy arguments, but none identifies uncertainty in controlling law. Mot. at 5–8, 11–13.

*First*, Meta urges a four-corners-only approach to consent that would exclude the reasonable-person inquiry. Mot. at 5–8. That is not the governing standard. The Court considered the Privacy Policy's text, including its disclosures about browsing data, cookie data, and matching. Order at 8–9. But *Calhoun* requires more than textual isolation; courts evaluate "the circumstances, considered as a whole." Order at 10 (quoting *Calhoun*, 113 F.4th at 1147); *see also In re Facebook, Inc., Consumer Priv. User Profile Litig.*,

402 F. Supp. 3d 767, 789 (N.D. Cal. 2019). Meta's objection is therefore not to legal uncertainty, but to the settled contextual inquiry *Calhoun* requires. Its contract cases do not create a contrary rule. As Meta concedes, those cases arise outside the privacy-consent context and do not hold that courts applying *Calhoun* must ignore the context informing what a reasonable user would understand. *See* Mot. at 5–8. To the extent Meta asks the Ninth Circuit to replace that standard with a different one, it is not identifying a substantial ground for difference of opinion; it is asking to change the law. *See Couch*, 611 F.3d at 633.

*Second*, Meta argues a standard keyed to "reasonable expectations" creates uncertainty about "which reasonable expectations should govern." Mot. at 11. But the Ninth Circuit has already answered that question. The inquiry is objective and asks what a reasonable person would understand, not what different subjective groups might believe. *See Calhoun*, 113 F.4th at 1148–49; Order at 10 n.4 ("[T]his inquiry focuses on the understanding of a reasonable person."). As courts have repeatedly held, if the relevant disclosures are "reasonably susceptible to more than one interpretation," consent cannot be determined as a matter of law. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 823 (N.D. Cal. 2020) (citation omitted); *see also Calhoun*, 113 F.4th at 1151 (remanding for trial because application of the correct standard revealed disputes of material fact regarding consent); *Opperman*, 205 F. Supp. 3d at 1077 (concluding that "whether [plaintiffs'] expectations were objectively reasonable . . . is a question for the jury, not this Court").

*Third*, Meta's request for appellate guidance on privacy-policy drafting is not a statutory basis for certification. Mot. at 11–13. Section 1292(b) requires a substantial ground for difference of opinion on a controlling question of law; policy interests do not substitute for that showing. *See Couch*, 611 F.3d at 634–35 (district courts must "remain focused on the statutory requirements, not policy considerations which may or may not be furthered by certification"). Meta's speculation that the Ninth Circuit might want to address corporate privacy-policy drafting is therefore beside the point.

### C. <u>Immediate Appeal Would Delay, Not Materially Advance, the Litigation</u>

Meta also fails to satisfy the third statutory requirement because an interlocutory appeal would not "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Meta's argument proves too much. Nearly every defendant whose motion to dismiss is denied can say that a successful appeal would narrow or end claims against it. But § 1292(b) requires more than the ordinary possibility that

appellate reversal could shorten a case. *See Henley*, 2019 WL 8333448, at *3 (rejecting argument that appeal would materially advance litigation because success "would end the litigation," explaining that accepting that theory would make "essentially all 'potentially dispositive interlocutory orders . . . automatically appealable'" (citations omitted)). If that were enough, "any denial of a garden-variety motion to dismiss could be certified for interlocutory appeal," collapsing the final-judgment rule into a routine mechanism for immediate review of pleading-stage losses. *Houghton*, 2025 WL 1712354, at *7.

Meta's broader "guidance" argument— that interlocutory review would provide guidance for "privacy cases pending" across the Ninth Circuit (Mot. at 1, 14)—fares no better. Section 1292(b) asks whether an immediate appeal will "materially advance the ultimate termination of the litigation"—not whether a losing party believes the Ninth Circuit might someday provide useful commentary on privacy-policy drafting. The Ninth Circuit has cautioned that "[a] district court confronting a motion to certify . . . should remain focused on the statutory requirements, not policy considerations which may or may not be furthered by certification." *Couch*, 611 F.3d at 635. Meta's speculation that appellate guidance might benefit other privacy cases therefore cannot substitute for showing that this appeal would actually and materially move this case toward termination. *See James v. Walt Disney Co.*, No. 23-cv-02500-EMC, 2024 WL 664811, at *3 (N.D. Cal. Feb. 16, 2024) (recognizing that a request for Ninth Circuit "guidance" on web-tracking suits "warrants consideration," but denying certification because "the outcome of the litigation would be more materially advanced" by developing "the full set of relevant facts").

Most concretely, Meta's proposed appeal would not terminate this litigation. Meta's motion is carefully framed as seeking dismissal of the claims "as against Meta," not termination of the action as a whole. Mot. at 13. Even accepting Meta's premise, then, this case would continue. Plaintiffs' negligence claim against Google remains alive after the Court denied Google's motion to dismiss that claim. Order at 17–21, 23. Plaintiffs' claims against Google are not before the Ninth Circuit under Meta's proposed question, and the case would still require discovery into the same Android architecture, sandboxing protections, localhost abuse, browser-to-app communications, and the same alleged course of conduct. Order at 1–5, 17–21; FAC ¶¶ 50–68, 87–95, 244–52. Interlocutory appeal would merely postpone that discovery while creating a piecemeal appeal on one defendant's consent defense. *See Wang*, 759 F. Supp. 3d at 1013 (denying certification where "the bulk of the case will move forward regardless of the outcome on

appeal" and remaining claims "involve facts and legal questions that overlap with the claims asserted against" the moving defendants); *Gitson v. Trader Joe's Co.*, 63 F. Supp. 3d 1114, 1117 (N.D. Cal. 2014) (denying certification where "the key questions in this case are the same regardless of the number of products at issue"); *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 966 F. Supp. 2d 1031, 1046 (C.D. Cal. 2013) (denying certification where "discovery would proceed in largely the same fashion" and "the Ninth Circuit's resolution of the preemption issue" would not address remaining claims).

Nor would immediate appeal advance the litigation more efficiently than ordinary factual development. Meta seeks review of a pleading-stage consent ruling that depends on what a reasonable user could understand from Meta's disclosures and the alleged facts. Mot. at 1, 13; Order at 8–10. The Order held that, at this stage, a reasonable user could read Meta's Privacy Policy as disclosing broad, imperfect matching of Android browsing data—not that Meta would circumvent sandboxing restrictions to render people's web browsing activity non-anonymous and identifiable in real time. *See* Order at 9–10. Further factual development will do more to advance the litigation than an immediate appeal because it will clarify the very issue Meta asks the Ninth Circuit to decide now: whether users consented to the specific conduct alleged. *See Shah v. Fandom, Inc.*, No. 24-cv-01062-RFL, 2024 WL 6903081, at *2 (N.D. Cal. Dec. 16, 2024) (Lin, J.) ("Nor would certifying the issue for interlocutory appeal at this early stage materially advance the termination of the litigation. As the Court indicated in its original order, whether users had a reasonable expectation of privacy in their IP addresses vis a vis third parties is a fact-sensitive question."); *James*, 2024 WL 664811, at *1–3 (denying certification where "the ultimate question" could "turn on a full assessment of the facts" and explaining that, "[w]here complete facts are in need of development, certification under § 1292(b) is not appropriate"); *see also Frasco v. Flo Health, Inc.*, No. 21-cv-00757-JD, 2025 WL 1476905, at *1 (N.D. Cal. May 22, 2025) (in case involving Meta's policies, noting "[d]isputes of fact abound with respect to the scope of consent").

Meta's proposed appeal also would not guarantee finality as to it. Even if Meta persuaded the Ninth Circuit that this Court's consent analysis should be modified, the likely result would be further proceedings over whether Plaintiffs can plead or prove lack of consent under whatever new standard the Ninth Circuit articulates. Further proceedings may still be required to determine how Meta's disclosures apply to the operation of the Modified Pixel, the Modified Meta Apps, localhost communication, and reasonable user

expectations—not to mention whether Plaintiffs actually consented to the relevant disclosures or whether such disclosures are binding. *See* Order at 8–10; ECF No. 122 (First Amended Consolidated Class Action Complaint) ¶¶ 50–68, 75–78. That is the kind of detour § 1292(b) is designed to avoid. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 476 (S.D.N.Y. 2013) (explaining that interlocutory appeal would "at most, lead only to a remand for repleading, with possibilities of further interlocutory appeals thereafter" (citation omitted)).

The ordinary course is therefore the efficient path. Because this case will proceed regardless of Meta's proposed appeal, and because factual development will better frame any appellate issue, immediate review would delay rather than materially advance the litigation.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Meta's Motion.

Dated: June 24, 2026

Respectfully submitted,

By: */s/ Michael K. Sheen*
Michael K. Sheen

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Michael W. Sobol (SBN 19485)
msobol@lchb.com
Michael K. Sheen (SBN 288284)
msheen@lchb.com
Amelia A. Haselkorn (SBN 339633)
ahaselkorn@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Douglas I. Cuthbertson (*pro hac vice*)
dcuthbertson@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: 212.355.9500
Facsimile: 212.355.9592

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (SBN 354768)
pfraietta@bursor.com
50 Main St., Ste. 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (pro hac vice)
ykopel@bursor.com
Max S. Roberts (SBN 363482)
mroberts@bursor.com
Victoria X. Zhou (pro hac vice)
vzhou@bursor.com
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163

**AHDOOT & WOLFSON, PC**
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore W. Maya (SBN 223242)
tmaya@ahdootwolfson.com
Alyssa D. Brown (SBN 301313)
abrown@ahdootwolfson.com
Sarper Unal (SBN 341739)
sunal@ahdootwolfson.com
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

**AHDOOT & WOLFSON, PC**
Melissa Clark (pro hac vice forthcoming)
mclark@ahdootwolfson.com
521 5th Avenue, 17th Floor
New York, NY 10175
Telephone: (917) 336-0171
Facsimile: (917) 336-0177

**MILBERG, PLLC**
Mariya Weekes (pro hac vice)
333 SE 2nd Avenue, Suite 2000
Miami, FL, 33131
Tel: (786) 879-8200
Fax: (786) 879-7520

**MILBERG, PLLC**
Gary M. Klinger (pro hac vice)
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
gklinger@milberg.com

**MILBERG, PLLC**
William J. Edelman (SBN 285177)
280 South Beverly Drive, Penthouse
Beverly Hills, CA 90212
Phone: (866) 252-0878
wedelman@milberg.com

*Interim Class Counsel*